VELASCO FISH & OYSTER CO. v. TEXAS CO.

(Court of Civil Appeals of Texas. Galveston. June 3, 1912.)

1. APPEAL AND ERROR (§ 934*)—JUDGMENT—PRESUMPTIONS.

Where no conclusions of fact were requested, or if requested none were filed, the appellate court will presume such a finding as will sustain the judgment provided such finding is supported by evidence, and this rule applies where conclusions are filed in which there is no finding on a material issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3777–3781, 3782; Dec. Dig. § 934.*]

2. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—STATEMENT.

A statement, following an assignment of error, that the court failed to file conclusions of fact and law, that the defeated party in open court gave notice of appeal and requested the filing of findings of fact and conclusions of law, but not supported by anything in the record, is insufficient to require the court on appeal to review the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. APPEAL AND ERROR (§ 547*)—ASSIGNMENTS OF ERROR—BILL OF EXCEPTIONS.

An assignment of error complaining of the failure of the trial judge to file conclusions of fact and law within 10 days after adjournment will not be considered. where there is no bill of exceptions to the failure to file such conclusions within the specified time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2427, 2429–2432; Dec. Dig. § 547.*]

4. TRIAL (§ 390*)—CONCLUSIONS OF FACT AND LAW—TIME FOR FILING.

Conclusions of fact and law not filed after the expiration of the 10 days allowed by law must be disregarded by the court on appeal.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 913; Dec. Dig. § 390.*]

5. APPEAL AND ERROR (§ 1071*)—HARMLESS ERROR—ERRONEOUS FINDINGS.

The error of the trial court in making findings not supported by any evidence is immaterial, where they are not necessary to support the judgment rendered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

6. NEGLIGENCE (§ 135*)—VENDOR OF IMPERFECT GOODS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action against the seller of a leaky gasoline tank, evidence held to justify a finding that the destruction of a gasoline motor boat by an explosion of gasoline escaping from the tank was caused by the contributory negligence of the operator of the boat.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 274–276; Dec. Dig. § 135.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Error from District Court, Brazoria County; Wells Thompson, Judge.

Action by J. E. Hooper and others, partners doing business under the name of the Velasco Fish & Oyster Company, against the Texas Company. There was a judgment for defendant, and plaintiffs bring error. Affirmed.

C. D. Jessup and Masterson & Rucks, all of Angleton, for plaintiffs in error. Jos. L. Autry and Robt. A. John, both of Houston, for defendant in error.

REESE, J. This is an action to recover damages by J. E. Hooper and others, partners doing business under the partnership name of the Velasco Fish & Oyster Company, against the Texas Company, a corporation, growing out of the destruction by burning of a gasoline motor boat, owned by plaintiffs, while en route from Galveston to Velasco, upon the allegations that the burning of the boat was caused by the ignition of gas escaping from an iron or steel tank of gasoline which had been purchased from defendant; the escape of the gas being, as alleged, the result of improper filling of the barrels with gasoline, and defective tank. All of the items of damage claimed were stricken out on exceptions of defendants, except that involving the value of the boat, which was totally destroyed, and the value of which was alleged to be $1,071. The case was tried without a jury, resulting in a judgment for defendant from which this writ of error is prosecuted·by plaintiff.

There is in the record a paper which purports to be conclusions of fact and law signed by the trial judge 18 days after the adjournment of the term. If this paper could be treated as such conclusions as are required to be filed upon request of either party, the objections of the appellant to some of the conclusions of fact, on the ground that they are not supported by the evidence, would have to be sustained. For this reason and the further reason, which will be hereafter explained, that the conclusions cannot be so regarded, our conclusions of fact are made without regard to the trial court's findings.

[1] The rule is well settled that where no conclusions of fact are requested, or if so requested no conclusions are filed, the appellate court will impute to the trial court such a finding upon every issue of fact as will sustain the judgment, if such finding is supported by the evidence. The appellate court will presume that as to every issue raised by the pleadings, if the evidence will support such finding, every fact necessary to sustain the judgment was found. Fitzhugh v. Land Co., 81 Tex. 314, 16 S. W. 1078. This rule also applies where conclusions are filed in which there is no finding on some material issue.

The evidence authorizes the following fact conclusions: The boat in question is a small craft, for operating in inland waters, designated a "motor boat," using gasoline to generate propelling power. The boat, at the time of its loss, was owned by the Velasco Fish & Oyster Company, a firm composed of J. E. Hooper and his associates, with the said Hooper as general manager and captain of the boat, and was of the value claimed. About September 27, 1909, the boat being in Galveston, Hooper bought for the use of the boat two iron or steel tanks of gasoline from the Texas Company, and the same were delivered to him on board the boat. The boat had what is known as a cockpit about three feet deep. The two tanks of gasoline were placed in this cockpit, about two feet from the engine, which was a small twelve horse power engine. Soon after leaving Galveston for Velasco, Hooper noticed that one of the tanks was "purging" or leaking at the bung, which was in the top of the tank; the tanks being placed on end. Hooper endeavored to screw down the nut or bung so as to stop the purging, and in order to more effectually do so he took some lamp wicking and "bushed" the bung and screwed it down as tight as he could. He concluded that he had stopped the leak, and wiped off all of the gasoline from the chimbs of the tank and threw the waste overboard. Darkness coming on while still some distance from Velasco and while going through the intercoastal canal, Hooper, as he was required to do by law, to keep out lights while running after dark, undertook to light his lantern. The boat was then going about eight miles an hour, and the wind was blowing from the direction the boat was traveling. In order to light the lantern, Hooper stooped down with the lantern in the cockpit, four or five feet from the tank of gasoline that had been leaking, and struck a match. From some source, not very definitely shown, there was an accumulation of gas from gasoline, which ignited from the flame of the match, and in an instant the interior of the cockpit was in flames. The tank of gasoline exploded from the heat, and the boat was entirely consumed. There was also in the cockpit a small galvanized iron tank to hold the operating supply of gasoline. Hooper, from whose testimony all of the material facts are gathered, testified that this tank was repaired at Galveston and did not leak. He testified, also, that the tanks bought from the Texas Company had been filled too full, leaving no room for expansion of the gasoline, which caused the purging at the bung, and that when this was stopped by him a leak developed in the side seam of the tank, which was in this respect defective, and that the accumulation of gas in the cockpit, which exploded when he struck the match, was from this leak in the side seam of the tank. He testified that he did not know this when he undertook to

light the lantern in the cockpit so close to the tank which had been leaking at the bung. As the explosion followed instantly, with consequent outburst of flames, filling the cockpit, it is difficult to understand, and is not made clear by the evidence, how Hooper discovered, if he did not know the fact at the time he struck the match, that the tank had leaked at the side seam from the natural pressure from within.

Gasoline is a very volatile substance. Upon exposure to the atmosphere a highly inflammable and explosive gas is produced. If this gas be confined, as in the cockpit of the boat, and allowed to accumulate there, the striking of a match in the cockpit was reasonably sure to produce a dangerous explosion, and the heat thus generated would cause the gasoline in the tanks to expand and explode the tanks. Hooper had had 12 or 15 years' experience in handling and using gasoline and knew all about its properties as aforesaid. In the circumstances the lighting of the match in the cockpit in such close proximity to the tanks of gasoline was a negligent act, and was the direct and immediate cause of the explosion and consequent destruction of the boat. Whether there was negligence in either of the particulars charged in the petition, on the part of appellee, was an issue of fact. In the paper styled "conclusions of fact" in the record there is no finding on this issue. So, whether this paper be considered or not, we must make such finding on this issue as will support the judgment, if the evidence is such as to authorize such finding. We have examined the evidence very carefully and are unable to say that it is such that reasonable minds cannot differ as to the fact of negligence on the part of appellee. It seems clear to us that the court would have committed error, if, in case of trial with a jury, they should have been instructed as a matter of law that appellee was negligent in either of the particulars charged. It would have been an issue for the jury. We are authorized, if not required, to assume that the trial court found that the evidence failed to establish negligence on the part of appellee as the proximate cause of the accident. Upon the whole evidence, if the case had been tried with a jury, the court would not have been justified in instructing the jury as matter of law that the negligence of appellee, if it was negligent, was the proximate cause of the explosion.

[2, 3] By the first assignment of error appellant complains of the failure of the trial judge to file his conclusions of fact and law within 10 days after adjournment, and this is urged as ground for reversal. The record shows that the conclusions were filed 18 days after adjournment. In the statement following the assignment it is stated: "The plaintiff below in open court gave notice of appeal and requested the court to file his findings of fact and conclusions of law." There

is nothing in the entire record to support this statement that the court was requested to file such conclusions. This is a sufficient answer to the assignment. It further appears, however, that no bill of exceptions was taken to the failure of the judge to file such conclusions within the 10 days, which is also fatal to the assignment. Fitzhugh v. Franco-Texas Land Co., 81 Tex. 307, 16 S. W. 1078; Cotulla v. Goggan, 77 Tex. 35, 13 S. W. 742; Landa v. Heermann, 85 Tex. 4, 19 S. W. 885.

[4] Appellants in their argument presented in their brief insist that the conclusions of fact and law, having been filed after the expiration of the 10 days allowed by law, should be disregarded and treated as a nullity. Appellee makes the same contention. The contention must be sustained.

[5] It really makes no difference in the disposition of the appeal whether the paper in the record styled "conclusions of fact and law" and signed by the trial judge is considered as such or not. If it is so regarded, then the second, third, fifth, and sixth assignments of error and the first additional assignment, objecting to certain conclusions of fact, must be sustained. Neither of these findings appear to have any support in the evidence. They are, however, all immaterial, and none of them is necessary to support the judgment.

[6] The fourth assignment complains of the finding that it was negligence on the part of Hooper to attempt to repair or stop the leak by screwing the bung and bushing it with lamp wicking. This finding is directly supported by the testimony of the witness F. T. Manly, who testified: "To put lamp wicking around the bung and screw it down, it will act the same as a lamp wick and draw the oil out. We use leather or lead for washers. We never use lamp wicking. It is not proper." The assignment is overruled.

The seventh assignment of error complains of the finding that Hooper was guilty of such contributory negligence as to defeat a recovery by plaintiff. This assignment cannot be sustained. The act of striking the match in the cockpit and close to the tank of gasoline, which was the immediate cause of the accident, was an act of negligence. Hooper testified: "I have testified that I have had about 10 or 12 years' experience in the handling of gasoline. I understand its properties. I know that the proper way to load a barrel is not to fill it too full. I knew they were filled too full after I had left Galveston. I knew it before I lit the match. Both barrels leaked. I knew that both barrels were improperly loaded. I knew that they had improperly loaded them. I knew it at the time I lit the lanterns. I knew all this. I knew they were too full."

Under this testimony and in fact all of the evidence, the finding that Hooper was

guilty of negligence which directly caused the accident was amply justified. This alone was sufficient to defeat a recovery.

We have examined all of the assignments of error and the several propositions thereunder and conclude that none of them presents sufficient grounds for reversal. The judgment is therefore affirmed.

Affirmed.