ALSWORTH et al. v. REPPERT et al.
(No. 5291.)

(Court of Civil Appeals of Texas. San Antonio. June 3, 1914.)

1. TRIAL (§ 390*)—FINDINGS AND CONCLUSIONS—TIME FOR FILING.
    Under the statutes allowing the court 10 days after adjournment in which to file findings of fact and conclusions of law, an order of court allowing itself 30 days after adjournment in which to file such findings and conclusions conferred no power to file them after the time prescribed by statute.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 913; Dec. Dig. § 390.*]

2. ESTOPPEL (§ 63*)—INCONSISTENT CLAIM—SALE OF TREES—PASSING OF TITLE.
    Under a contract whereby the seller, in consideration of certain payments, agreed to deliver in a healthy condition all orange trees in his nursery more than two feet in height, estimated at 3,000, to be delivered by their removal by the buyer at his own expense, at 30 cents per tree, that the buyer thereafter instructed the seller not to sell to others trees over two feet high did not estop him from denying that the title passed by the contract; it being only notice of his claim to the right to all trees of that size.
    [Ed. Note.—For other cases, see Estoppel, Dec. Dig. § 63.*]

3. SALES (§ 61*)—CONSTRUCTION OF CONTRACT.
    The contract was an executory contract of sale, and title to trees which were frozen before they were dug and removed by the buyer never passed to him so as to make him liable for the price.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 162–170; Dec. Dig. § 61.*]

4. SALES (§ 72*)—CONSTRUCTION OF CONTRACT—QUALITY OF GOODS—"SOUND AND HEALTHY CONDITION."
    Where the seller contracted absolutely to deliver orange trees in a "sound and healthy condition," it meant that the trees were to be

alive, and not frozen so badly as to be worthless, and the seller, failing to deliver them in that condition, could not recover therefor.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 197–202; Dec. Dig. § 72.*]

5. SALES (§ 150*)—PASSING TITLE—RISK OF LOSS.

In the absence of contract, the risk of loss of goods sold goes with the title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 350, 351, 354–356; Dec. Dig. § 150.*]

6. SALES (§ 358*)—ACTION FOR PRICE—EVIDENCE.

In an action for the price of "sound and healthy" orange trees which the seller was to deliver, but which were frozen before delivery, evidence that the term "sound and healthy" meant, among nursery men, such condition as was certified to by inspectors from the department of agriculture, was inadmissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1049–1055; Dec. Dig. § 358.*]

Error from District Court, Galveston County; John M. Conley, Acting Judge.

Action by C. W. Alsworth and another against A. P. Reppert and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

C. W. Bocock and Gill, Jones & Tyler, all of Houston, for plaintiffs in error. Barkley & Green, of Houston, and Marsene Johnson, of Galveston, for defendants in error.

MOURSUND, J. [1] Plaintiffs in error sued defendants in error for $830, alleged to be the balance due plaintiffs for 3,200 orange trees sold and delivered to defendants. The defendants answered by a general denial and a plea that they had paid plaintiffs for all the trees delivered to them; that about November 29, 1911, most of the trees froze, and plaintiffs could not deliver them in a sound and healthy condition as they had contracted to do, for which reason they were not indebted to plaintiffs in any sum. The court rendered judgment for defendants, and, upon plaintiffs' request, filed findings of fact and conclusions of law, on February 14, 1913. The court adjourned on January 31, 1913. As a precautionary measure, the court entered an order allowing himself 30 days after adjournment in which to file findings of fact and conclusions of law. This order conferred no power upon the court to file findings of fact and conclusions of law after the time prescribed by statute, namely: 10 days after adjournment. Wandry v. Williams, 103 Tex. 91, 124 S. W. 85; Melvin v. Deer (Tex. Civ. App.) 126 S. W. 681; Velasco Fish & Oyster Co. v. Texas Co. (Tex. Civ. App.) 148 S. W. 1184; Houston Oil Company v. Powell (Tex. Civ. App.) 151 S. W. 887. The failure of the court to file the same within the statutory time was not excepted to by plaintiffs, nor is it assigned as error. The findings of fact and conclusions of law will not be considered. There is an agreed statement of facts in the record, and the case will be disposed of as if no findings of fact had been requested or filed. The facts are undisputed anyway, and it only remains to determine whether the judgment of the court thereon was correct.

The parties, on November 14, 1911, executed a written instrument, as follows:

"November 14, 1911.

"Purchase Contract.

"The State of Texas, County of Galveston.

"The following contract and sale is this day entered into between C. W. Alsworth & Son, hereinafter named as party of the first part, and the Satsuma Nursery Co., represented by its manager, I. M. Johnson, known hereinafter as the party of the second part, all parties now residing in Bay View, Galveston Co., Texas, and is made performable in all its parts in Galveston county, Texas.

"For and in consideration of one hundred ($100.00) dollars, this sum paid to us in hand this date, and two hundred ($200.00) dollars to be paid to us December 5, 1911, we, the party of the first part, bind ourselves and agree to deliver to party of second part, in a sound and healthy condition, such and all trees now growing in our nursery rows, and hereinafter described. The party of the second part to dig all the trees described, and is to have the privilege of *balling* said trees on the grounds as dug.

"Party of the first part agrees that party of second part shall have the privilege of digging and removing from his nursery any and all Satsuma Orange nursery stock now standing in his nursery rows, and ranging in height from two feet in height and up.

"The party of the second part agrees that all trees shall be removed from nursery rows of party of first part on or before March 1, 1912.

"The total number of the aforesaid trees are estimated by both party of first and second part as three thousand, for which party of first part is to receive from party of second part the sum of thirty cents (30¢) per tree. Three hundred ($300.00) dollars of this sum is to be paid to party of first part by party of second part as trees are delivered, the delivery consisting as above described, wherein party of second part is to dig said trees at his own expense.

"Witness our signature this the fourteenth day of November, 1911.

		"C. W. Alsworth & Son,
			"By. W. Alsworth, Mgr.
		"Satsuma Nursery Co.
			"By I. M. Johnson, Mgr.
"Witness: S. B. Crawford."

Upon the signing of said instrument, which was written by the defendants, the latter paid plaintiffs $100, but failed and refused to pay the $200 on December 5, 1911, but on December 20, 1911, paid $30. On January 24, 1912, defendants removed 261 trees. The trees were sound and healthy at the time the written instrument was executed; but about November 29, 1911, all were frozen, except the 261 above mentioned. The testimony showed there were 3,685 trees of the size mentioned in the agreement. Defendants instructed plaintiffs, after the agreement was executed, not to dig any trees over two feet high under any circumstances. When the $30 was paid, defendants told plaintiffs that said amount, with the $100 theretofore paid, would cover all the live trees they could get, and refused to pay any more until they

should ascertain how many good trees they would get out of the lot.

[2] The evidence with regard to defendants' instructions not to dig the trees was introduced pursuant to a plea by plaintiffs in their supplemental petition, to the effect that defendants were estopped to deny that the title passed, because a short while after the execution of the written agreement between them plaintiffs undertook to sell the surplus over 3,000 trees of the size described in said agreement, and defendants stated that the contract called for all trees of that size, and that all trees of that size belonged to defendants. The evidence fails to show any element of estoppel, and such statement by defendants does not tend to show that defendants construed the written agreement as passing the title, but merely shows that defendants were insisting upon their right to have all the trees delivered to them which were covered by the agreement.

[3-5] Appellants' main contention is that the written instrument passed the title to the trees from appellants to appellees, and that the latter must therefore bear the loss. The instrument is headed "Purchase Contract," and is referred to as a "contract and sale." It does not recite that the appellants have sold the trees to appellees, but that appellants agree to deliver them in a sound and healthy condition. The trees were sound and healthy at the time the instrument was signed, and, had it been intended that appellees should take title at that time, and with it the risk, it would have been easy to have expressed that intention by simply saying that the trees were sold and delivered to appellees. The instrument further provides that the balance was to be paid "as trees are delivered, the delivery consisting as above described, wherein party of second part is to dig said trees at his own expense." By this clause the parties admit that no delivery has been made, and agree what should constitute a delivery. It does not appear that the trees were counted, or their number agreed upon, at the time or before the signing of said instrument, and, while the number of trees of the size mentioned could easily be arrived at by measuring and counting, yet it also became necessary to determine at the time of delivery how many of the trees were sound and healthy, and to separate them from those which might be unsound or unhealthy. The agreement either contemplated that the title should pass at the time of delivery as to those trees only which were sound and healthy at such time of delivery, in which case the risk was with the appellants, or that the title passed at once, and appellants contracted that all of the trees would remain in a sound and healthy condition up to the time when delivery should take place as provided in the instrument. The latter construction, which was the one adopted by the trial court, is said by appellants to be absurd, as it would bind them to deliver every tree of the size specified then growing in their nursery rows, and, if they failed to do so, appellees would be released from complying with the contract. Such a contract appears very unwise to appellants after the freeze, and upon a close analysis of its terms by their attorney; but it is highly probable that when they signed it they did not view it as they now do. Certainly their contention that one part of the contract refers to a constructive delivery and the other to an actual delivery is absurd. They say that the obligation to deliver in a sound and healthy condition meant to so deliver constructively at the time the instrument was signed, and, as it is admitted that the trees were sound and healthy at that time, they have fully complied with their contract. The delivery contemplated in the agreement was an actual delivery, and it was expressly provided how it should be consummated.

We conclude that the parties intended the instrument as an executory contract of sale, and that the title to the trees which became frozen had never passed to appellees; but, should we be mistaken in this, then it is clear that appellants contracted absolutely to deliver the trees in a sound and healthy condition when called for by appellees, and that they failed to comply with such contract. The law declares that the risk goes with the title; but that is in the absence of a contract. There can be no doubt that the parties as a part of their contract can provide that the seller assumes the risk up to time of actual delivery. When such a contract is made, and the payment is to be made for trees delivered in a sound and healthy condition, plaintiffs cannot recover the price upon delivering or tendering frozen trees. We are not considering the question whether appellants could be held for damages for failing to comply with their contract, but whether they can recover upon same when they have not complied therewith. If appellants wanted to make any exceptions which would relieve them from the risk they assumed by contracting that the trees would be sound and healthy when delivered, they should have named such exceptions in the contract. They did not occupy the position of bailees or agents of appellees, as contended by appellants, but as contractors who, having failed to comply with their contract, cannot recover the compensation agreed to be paid for such compliance. The first, third, fourth, fifth, and sixth assignments of error are overruled.

[6] The testimony that "sound and healthy" means, among nursery men, such condition of trees as is certified to by certificates of inspectors from the department of agriculture was properly excluded. No inspector would certify that dead or frozen trees were in a sound and healthy condition. The words "sound and healthy" may mean free of disease, as contended by appellants, but also mean that the trees must be alive,

and not frozen so badly as to be worthless. We therefore overrule the second assignment.

The judgment is affirmed.