## SANDS v. LEMMERHIRT.  (No. 9110.)

(Court of Civil Appeals of Texas. Dallas. April 26, 1924.)

1. **Stipulations** ⊚⇒3—**Trial** ⊚⇒403—**Findings and conclusions of trial court, not filed with-in time allowed, may be stricken.**

Under Rev. St. art. 2075, findings and con-clusions of the trial court, not filed within 10 days after adjournment, must be stricken, nor can the matter be controlled by agreement of the parties.

2. **Principal and agent** ⊚⇒136(2)—**Agent's contract for disclosed principal imposes no personal liability; exception stated.**

Generally agent's contracts within scope of authority on behalf of disclosed principal involve no personal liability, though agent re-ceives benefit or appropriates proceeds, though exception may exist where agent pledges or superadds his own credit to that of the prin-cipal.

3. **Principal and agent** ⊚⇒190(3) — **Evidence held insufficient to establish agent's fraud and render him personally liable.**

Evidence held insufficient to establish fraud of agent acting for disclosed principal, render-ing him personally liable.

4. **Fraud** ⊚⇒20—**Purchaser with knowledge of defects may not complain of fraud.**

Where evidence establishes that one pur-chasing merchandise from an agent was at the time aware of defects, he cannot subsequently complain of fraud in same, though the pur-chase may have been induced by the agent's fraud.

5. **Principal and agent** ⊚⇒136(2)—**Agent, in-ducing purchase of chemical heating bottle, held not personally liable to purchaser for defects.**

An agent, inducing the purchase of a bot-tle, which when uncorked and exposed to the air was supposed to generate and retain heat for a stated period, held not liable to the pur-

chaser for proceeds which he appropriated himself as compensation under agreément with his employer, nor liable to such purchaser for defects in bottle of which the purchaser was aware at the time of purchase.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by A. H. Lemmerhirt against the Triumph Manufacturing Company, Mann Bros., and W. W. Sands. From the judgment rendered, the last-named defendant appeals. Reversed and rendered.

C. A. Wright, of Fort Worth, for appellant.

Currie McCutcheon and Cavin Muse, both of Dallas, for appellee.

LOONEY, J. A. H. Lemmerhirt sued Triumph Manufacturing Company, a corporation, Mann Bros., a firm composed of Arthur and Clay Mann, of Tarrant county, Texas, and W. W. Sands, of Dallas county, Tex., in an action for damages. On trial before the court without a jury judgment was rendered for plaintiff against Triumph Manufacturing Company for $8,306.65, and against the appellant W. W. Sands for $536.25, and jointly against the corporation and Sands for costs; and that he take nothing as to the defendants Mann Bros. W. W. Sands alone appeals.

There are two preliminary motions to be disposed of before we reach the case proper.

[1] Appellant is urging a motion to strike out the findings of fact and conclusions of law filed herein by the trial judge, because the same were not filed within the time prescribed by law. The facts are that the term of court at which the case was tried adjourned finally on March 31, 1923, and the findings and conclusions of the trial court were not filed until April 16, 1923, more than 10 days after adjournment. In our opinion the motion to strike out is well taken, and must be sustained.

Article 2075, Revised Statutes, is as follows:

"The judge of any district or county court shall have ten days after adjournment of the term at which a cause may be tried in such court in which to prepare his findings of fact and conclusions of law in cases tried before the court, when demand is made therefor."

In construing this statute in Alsworth v. Reppert, 167 S. W. 1098, the Court of Civil Appeals said:

"As a precautionary measure, the court entered an order allowing himself 30 days after adjournment in which to file findings of fact and conclusions of law. This order conferred no power upon the court to file findings of fact and conclusions of law after the time prescribed by statute, namely, 10 days after adjournment"—[citing authorities].

"The failure of the court to file the same within the statutory time was not excepted to by plaintiffs, nor is it assigned as error. The findings of fact and conclusions of law will not be considered."

In Standard Paint Co. v. Rowan (Tex. Civ. App.) 158 S. W. 252, the court said:

"The court upon request of appellant made and filed findings of fact and conclusions of law, but such findings and conclusions were not filed within the time required by law, and will not therefore be considered."

This is not a matter that may be controlled by agreement of the parties, as was held in Patton v. Texas Pacific Coal & Oil Co. (Tex. Civ. App.) 225 S. W. 858, in which the court said:

"It appears from appellants' written agreement that the findings of fact and conclusions of law, made by the trial court and filed in said court, were omitted by the clerk from the transcript, and appellants and appellee agreed to have the same incorporated in a supplemental transcript, but it developed that said findings of fact and conclusions of law were not filed within the time prescribed by the statutes, hence they are not before us."

Also see Owen v. Smith (Tex. Civ. App.) 203 S. W. 1171; International & G. N. Ry. Co. v. Mudd (Tex. Civ. App.) 179 S. W. 686; Bliss v. San Antonio (Tex. Civ. App.) 173 S. W. 1176.

The motion to strike out the findings of fact and conclusions of law is sustained.

Appellee filed a motion to strike out the order of the trial court entered nunc pro tunc overruling appellant's general and special exceptions to the original petition of appellee, because the same was entered at a subsequent term of court and without motion therefor or notice to appellee or his attorneys of record. The allegations of this motion are sustained by the facts. The order of court overruling the general and special exceptions urged by appellant to the original petition of appellee was made January 12, 1923, but was not entered until May 14, 1923, after adjournment of the term, and the nunc pro tunc order was entered without formal motion therefor having been made, and without notice to appellee or his attorneys of record. The decision of the question raised by this motion is not essential to the disposition of this case, therefore it will not be decided by us.

We come now to the consideration of the case proper.

Appellant has a number of assignments which will not be considered in view of the disposition which we shall make of the case. His main contention is that the judgment of the court below is not sustained by the facts.

It appears that the Triumph Manufacturing Company, a corporation, with its domicile at Kansas City, Mo., was the manufacturer and distributor of a metal bottle called "the Ever Ready Hot Bottle." This was a small metal bottle about eight inches in diameter,

filled with chemicals, which, when uncorked and exposed to the air, and then recorked, was supposed, when functioning properly, from specific chemical combination to generate about 110 degrees of heat (Fahrenheit), and that the heat thus generated would be retained from eight to ten hours.

Arthur Mann, of Mann Bros., was the general sales manager of the manufacturing company, and, as such, appointed the appellant, W. W. Sands, agent, with authority to sell the bottles and appoint distributors, and make contracts for same and accept and receipt for money paid by distributors.

Acting under this authority, and within its scope, appellant, W. W. Sands, on behalf of the Triumph Manufacturing Company, entered into a written contract with appellee, A. H. Lemmerhirt. The caption or first paragraph reads as follows:

"This contract made and entered into this 19th day of October, 1921, by and between Triumph Manufacturing Company, a corporation organized and existing under the laws of the state of Missouri, of the first part, and A. H. Lemmerhirt, of Dallas, state of Texas, of the second part, witnesseth."

The contract then provides, in so far as is material for our consideration, substantially as follows: That the Triumph Manufacturing Company, first party, would furnish Lemmerhirt, second party, as many Ever Ready Hot Bottles as desired at $2.50 each; 50 cents cash was to be paid for the number of bottles contracted for, and the balance, $2, to be paid in cash when bottles were ordered; second party contracted for 2,000 bottles, and paid $1,000 to appellant, being 50 cents per bottle for the number contracted for; the payment made was $500 cash and the execution of a note for $500. Fifty of these bottles were ordered by appellee and delivered to him by the company, and he thereupon began efforts to sell the same by advertisement and otherwise. Appellant verbally agreed with appellee at the time the written contract was entered into that a sufficient supply of advertising matter would be furnished by the company, but it seems that this was never done, and the bottles delivered to appellee failed to function and proved to be worthless.

The arrangement between appellant and Mann Bros. was that the two should retain as their commission 50 cents for each bottle sold, to be divided equally; that is to say, Mann Bros. should retain 25 cents, and appellant should retain 25 cents per bottle. According to this arrangement appellant retained $250 of the cash payment made by appellee as his commission, and remitted to Mann Bros. the note and $250 of the cash payment.

When the bottles proved to be worthless, appellee notified appellant and Mann Bros., and demanded the return of his note, which was delivered to him by Mann Bros. in accordance with his demand, and he also demanded from both Mann Bros. and appellant the return of the $500 cash payment, which was refused.

The written contract above mentioned was signed as follows: "Triumph Manufacturing Company, by W. S. Sands, General Sales Manager, party of first part," and "A. H. Lemmerhirt, party of the second part."

As we view the facts of the case there is nothing to distinguish it from any ordinary case where the agent purports to act, and does act, within the scope of his authority on behalf of a disclosed principal.

[2] The general rule of law is that the acts and contracts of an agent within the scope of his authority, on behalf of a disclosed principal, are generally considered the acts and contracts of the principal, and, in the absence of an agreement to the contrary, involve no personal liability on the part of the agent. The application of this rule is not affected by the fact that the contract is made for the agent's benefit or that the agent appropriates the proceeds of the contract to his own use. 2 C. J. pp. 812, 813.

The rule is stated in Mechem on Agency, vol. 1, p. 999, § 1357, as follows:

"Where a contract is made by an authorized agent in the name and on account of a competent principal, the agent incurs no liability upon or with reference to the contract. The agent does not guarantee that his principal will perform the contract, or that he will perform it, neither does he guarantee the honesty, solvency, or good faith of his principal, nor the legal sufficiency or validity of the contract. The agent is merely the means of making for his principal the contract itself. All matters respecting its validity or effect, and all questions respecting its performance, lie ordinarily beyond the range of the agent's undertaking. If the agent is liable, it must be because of the abnormality of the situation, or of some personal undertaking which the agent assumes. The same rule applies, of course, to the collateral promises respecting undertakings and other acts of the agent made in good faith in the name of his principal, and within the scope of the agent's authority. They bind the principal and not the agent personally."

Also see Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593; Cuneo v. Wimberly (Tex. Civ. App.) 115 S. W. 673.

We do not understand that appellee controverts the correctness of the rule of law just stated, but insists that the facts take it from under this general rule, and that the case is to be controlled by a modification of the rule; that is, by the doctrine that imposes a personal liability on the agent for fraud committed, or where the agent evidences an intention to pledge or superadd his credit to that of the principal.

The only evidence we find in the record that could be considered as tending to establish fraud on the part of appellant is that

testimony of the appellee, himself, as follows:

"As to what representations Dr. W. W. Sands made to me with reference to the product that he wanted me to handle, known as the 'Ever Ready Hot Bottles,' as to what he represented that bottle to be and what it would do, and what kind of a product it was, to induce me to sign this contract, he demonstrated the bottle to me; * * * at our first meeting he demonstrated the bottles to me once, and at our second meeting once, and I guess once after that."

Again appellee testified:

"I went to Dr. Sands' house only once and got those samples that he had and took them out myself to demonstrate one time, and then went back and got another one, but it acted like that, not to my satisfaction. No sir, not to my satisfaction. Yes sir, that was before I signed the contract. I did show it to two physicians. Yes sir, once I attempted to function them myself before signing the contract. I experienced the same difficulty my customers experienced."

At another place in the record there is found the disconnected statement of appellee to the effect that the representations of Dr. Sands were untrue. Nowhere, however, is this statement related in any way to any representations shown to have been made by appellant.

It thus appears that appellee entered into the written contract in the absence of any inducing representation made by appellant, but, after the bottle in question had been demonstrated to him by Dr. Sands repeatedly, and after appellant had demonstrated with the bottles himself, and after ascertaining that the demonstration was not to his satisfaction, in fact, he states that he experienced the same difficulty that his customers experienced with reference to the bottles he sold, and that they were returned to him as worthless.

[3] In our opinion this evidence falls far short of establishing fraud on the part of Dr. Sands. It does establish, however, the fact that appellee entered the contract with his eyes wide open after repeated demonstrations in which the defects in the bottles complained of were developed, and that he knew what he was purchasing.

[4] Under this state of facts he will not be permitted to complain of fraud, even if the evidence should be sufficient to establish fraud on the part of appellant.

The rule of law applicable to such a state of facts is stated in 26 C. J. pp. 1134–1136, as follows:

"Since it is essential that the party to whom a misrepresentation is made should be deceived thereby and believe it to be true, one can secure no redress for a representation which he knew to be false, nor for failure to disclose facts which he knew to exist. If the representee knew the truth, it is obvious that he was neither deceived or defrauded, and that any loss he may sustain is not traceable to the representation but is, in effect, self inflicted. Moreover, reliance upon representations necessarily implies a belief in their truth, and it is therefore obvious that one could not rely upon representations known to be false. The mind is incapable of reliance upon such representations. Thus redress for fraud will be denied where, before acting upon false representations, the representee has learned the real facts, whether he secured such knowledge through personal investigation or experience or was informed thereof by an expert or by the principal of a representing agent. Obviously recovery in fraud will be denied where it is evident that the representee merely seeks to recompensate himself for the loss of a good bargain."

Appellee insists, however, that the appellant made himself personally liable to furnish advertising matter by virtue of a verbal agreement aside from the written contract.

We do not understand the evidence to have the meaning contended for by appellee. What was said by Sands with reference to the advertising literature was made in his capacity as agent for the company, and whatever obligation was undertaken with reference thereto was on behalf of the company and not personally.

Furthermore, appellee failed to make it appear that he was damaged in any sum by reason of the failure of the company to furnish the advertising matter; in fact, it is difficult to understand how he could have suffered a damage by reason of the failure to obtain the literature advertising the sale of a commodity that he claims was worthless, for such would have added to rather than diminished his troubles.

The money retained by appellant did not belong to the company nor to Mann Bros., but belonged to him under his employment, just as if he had remitted to the company and the company had, in turn, remitted his commission of $250.

[5] The judgment of the court below, in our opinion, is not supported by the evidence; hence it is reversed, and judgment here rendered for appellant.

Reversed and rendered.