## L. H. FITZHUGH ET AL. V. THE FRANCO-TEXAS LAND COMPANY.

### No. 7020.

1. **Sale of Land by Corporation—Acts of President.**—The authority merely to execute the instrument to complete a sale of land by statute given to the president of a private corporation (Rev. Stats., art. 600) does not imply the power to make the sale.

2. **Same — Power to Sell Land.** — The president of a corporation organized to acquire and sell lands may be constituted an agent to make sales, but like any other agent for that purpose he is restricted to the powers conferred upon him by the governing body.

3. **Rules Touching Power of President of a Corporation to Sell Land.—**

1. The agent can not have authority to do that which the corporation has not the power to do.

2. He must, in case of a corporation under our general law, derive his authority from the board of directors.

3. The directors may confer authority by by-law or resolution, or probably by a vote not entered of record.

4. When the power is conferred in neither of these methods it may be implied from a recognition and adoption of the transactions of the agent by the directors which would reasonably induce third parties dealing with them to believe and to act upon the belief that he has the power to do the act in question.

4. **Charter and By-Laws which do not Empower the President to Sell.**— The charter of appellee states its purpose: "The acquisition by purchase or otherwise and the location and subdivision of lands, the management and leasing thereof, and the sale and conveyance of the same in lots and subdivisions or otherwise." The by-laws contain the provisions: "The board of directors shall have the general management of the company. It [the board] may delegate all its powers fully or in part to one or several of its members. The lands of the company may be sold or leased for cash or on a credit, and at such times and on such terms as may be determined by the board of directors." *Held*, that by these provisions authority to sell was not given to the president.

5. **Recognition by Board of Directors.** — That sales of land by the president had been uniformly approved by the board of directors would not evidence a power to sell on credit without reserving the vendor's lien upon the land; the former sales had always been for cash, or secured by the vendor's lien.

6. **Implied Power to Sell.**—The course of business evidently showed power in the president to sell. But it would not authorize the sale upon terms materially variant from those upon which sales of land are uniformly made. To determine such terms the general custom of the country may be shown; also the fact that under the homestead and administration laws the vendor's lien is the only security a vendor on credit can rely upon.

7. **Charter Power of Private Corporation.**—A corporation with charter empowering it to buy and sell lands it seems would not have the power to deal in personal property for purposes of gain.

8. **Same — Power to Sell.**—A corporation having power to sell its lands for cash or on credit would not have power to exchange them for personal property to be held for purpose of trade.

9. **Notice to Persons Dealing with Corporation.** — All persons dealing with a corporation must take notice of the powers conferred upon it by its charter, and that its agents can not exercise any authority in excess of those powers.

10. **Case in Judgment.**—Duke, president of the appellee company, without express authority sold lands to appellant part cash and the greater part in a promissory note collectible in horses in a given brand at $30 each, the vendor's lien being waived. *Held*, that such sale was without authority and voidable.

11. **Practice—Findings of Fact, etc.**—Ordinarily the action of the judge in his findings of fact and of law are under his discretion, and before the action of the trial judge will be revised it must appear in the record that the defect was called to the attention of the court and that correction was refused.

12. **Rescission of Sale of Land—Rents Against Interest.**—Where a sale of land is rescinded by decree and it appears that the lands were held by the vendee between the sale and the decree, it was proper to offset the value of the rents against interest upon the payment made upon the purchase.

13. **Same—Return of Purchase Money.**—Since the plaintiff in suit to rescind a sale of land and for recovery of such land demands equity he should be required to do equity. He should promptly repay purchase money received. It was error to allow two years and six months in which to repay it. The time for such repayment is fixed at sixty days after the judgment in this court.

APPEAL from Taylor. Tried below before Hon. T. H. Conner. The opinion states the case.

*B. G. Bidwell* and *A. T. Watts*, for appellants.— 1.   The power or authority of the president of a private trading corporation in transacting its business with third parties can not be limited or restricted by any usage or custom of the company.   Nor can such usage or custom be asserted by the company to limit, control, or destroy a conveyance of the company's lands by its president, when such conveyance is made in accordance with the statutes of the State.   Rev. Stats., art. 600; 5 Wall., 704; 23 Wall., 492; 20 Wall., 488; 100 U. S., 686; 103 U. S., 155, 686.

2.   When the charter purpose of a private trading corporation is the acquisition and sale of lands, and the by-laws authorize sales for cash or on credit, and do not require the reservation of a lien to secure deferred payments, and where its president is held as the representative of the company as duly authorized to make sales and conveyances of its lands, such president would have authority to waive the vendor's lien for deferred payments and accept other security therefor.   And the fact that the presidents of the company had theretofore reserved vendor's liens to secure deferred payments would not limit nor restrain the authority of the president in this respect.   Wait on Insolv. Corp., sec. 7; Salt Lake City v. Hollister, 118 U. S., 256, 260; Railway v. Quigley, 21 How., 202, 210; 128 Mass., 489; 1 Metc. (Mass.), 221; 122 Mass., 391; 49 Ill., 416.

3.   It is error for the court to fail to file in the record when requested by either party an intelligible statement of the conclusions of fact and law separately found therein.   Rev. Stats., art. 1333; Callaghan v. Grenet, 66 Texas, 239, 240; Railway v. Fossett, 66 Texas, 338; Ins. Co. v. Milliken, 64 Texas, 46.

4.   There is nothing in the charter or by-laws of appellee which would limit the authority of its president in selling lands either for cash or on a credit.   The charter purposes of the corporation are the acquisition and sale of lands.   Its by-laws provide that the board of directors may delegate all or any part of its powers to one or several of its members; that the lands of the company may be sold for cash or on a credit.   It is alleged that the board of directors meet in Paris, France, and that the president transacts the business of the company at its office in Weatherford, Texas, selling and conveying the lands of the company.   There is nothing in the charter, by-laws, or resolutions retaining vendor's liens in land sales.   2 Mora. on Priv. Corp., secs. 3, 599, 606, 610 (note 2), 617; Bank v. Bank, 10 Wall., 604, 644; 6 How., 163; 4 Wheat., 255.

5.   Appellee having received the $10,000 and appropriated it to its own use, if the title to the lands is to be divested out of appellants and

invested in appellee, then appellee ought to be required to refund said money with interest.    2 Mora. on Priv. Corp., sec. 715; 6 Wall., 254; 93 U. S., 55; 14 Wall., 314; 94 U. S., 207; 22 Wall., 308.

6.    R. W. Duke as president of the company had authority to sell and convey the lands, and to accept other security to secure deferred payments and waive the vendor's lien.    1 Jones on Liens, sec. 403, and authorities cited; Smith v. Smith, 62 Ill., 493; Kraft v. Printing Co., 87 N. Y., 628; Crowley v. Mining Co., 55 Cal., 273; Water Co. v. Leete, 17 Nev., 203; Ins. Co. v. White, 106 Ill., 67–75.

*Hood, Lanham & Stephens,* for appellee.—1. The measure of power of a private corporation itself and of all its agents is what is expressed in its charter and fairly implied as being requisite to carry out the expressed powers and purposes named in its charter.    All else is prohibited.    1 Mora. on Priv. Corp., art. 316; Taylor on Priv. Corp., art. 120; Field on Priv. Corp., sec. 248, and note.

2.    Ordinary rules of law applicable to acts of special agents apply to all acts of all officers of private corporations.    Mora. on Priv. Corp., art. 58; Taylor on Priv. Corp., art. 193; 2 Mora. on Priv. Corp., art. 579; Mora. on Priv. Corp., arts. 60, 242, 251; 1 Mora. on Priv. Corp., secs. 514, 537; Field on Priv. Corp., secs. 54, 155.

3. ' All persons dealing with private corporations are chargeable with notice of the extent of the agent's powers and all restrictions contained in or fairly deducible from the charter, and also with notice of the general usage and custom of trade in regard to like matters in the country where a contract may be made or attempted.    Taylor on Priv. Corp., art. 195, and note; Mora. on Priv. Corp., arts. 64, 58, 59, 591, 593; G. B. Ultra Vires, p. 471, and authorities cited in note; 1 Pars. on Con., 5 ed., p. 42; 9 Pet., 607.

4.    The president and all other officers of a private corporation being agents of the corporation itself, their acts as such are to be tested by the principles of the law of agency.    And no agent whatsoever can bind the corporation if such agent fails to act in accordance with the purposes and objects of the corporation and within the scope of his authority.    And if such agent fails, his acts will amount to fraud on the rights of the corporation and be of no binding force whatever.    Reese v. Medlock, 27 Texas, 120; McAlpin v. Cassidy, 17 Texas, 464; Compress Co. v. Mfg. Co., 64 Texas, 338; Griffith & Wedge v. Morrison & Mathews, 58 Texas, 53; Hoffman v. Ins. Co., 92 U. S., 162, 165; 21 How., 441–443; Mech. on Agency, sec. 326; 84 Am. Dec., 611; 42 Am. Rep., 771; Dupont v. Wertherman, 10 Cal., 354.

5.    No act of an agent beyond purposes and powers of a private corporation can be ratified.    Mora. on Priv. Corp., art. 75; Taylor on Priv. Corp., arts. 266, 268, 272.

GAINES, Associate Justice.—This action was brought by appellee, a private corporation organized under the general laws of the State of Texas, to cancel conveyance of thirty-three sections of land made by one Duke, its former president, to W. G. Martin and J. H. Milliken, who, together with F. R. Milliken, S. H. Milliken, and L. H. Fitzhugh, were made parties defendant. The three last named defendants were sued as subsequent purchasers. After the institution of the suit J. B. Simpson became the purchaser of whatever interest Fitzhugh had in a portion of the lands, and was permitted to intervene in the suit to defend his right. There was a judgment in favor of the plaintiff against the intervenor and the defendants, from which Fitzhugh and Simpson have appealed.

The grounds upon which the cancellation of the conveyances were sought were fraud and the want of authority in Duke to sell the property upon the particular terms upon which it was attempted to be conveyed. The first deed was dated March 18, 1885, and purported to convey to W. G. Martin twenty-six sections of the land in consideration of the sum of $9920 paid in cash and the sum of $950 due one day after date, as evidenced by Martin's note, and as recited in the conveyance "the further consideration of a certain promissory note for $40,-000, bearing 10 per cent interest from date, executed by J. H. Milliken December 15, 1884, to W. G. Martin or bearer, and transferred and delivered by said W. G. Martin to R. W. Duke, president of the Franco-Texan Land Company, on the 18th day of February, 1885, due and payable December 16, 1886." It was also recited that the notes were received "in full payment of the balance of the purchase price of the lands;" and the testimony showed that it was distinctly understood between the parties to the transaction that the vendor's lien should be waived. This deed was not acknowledged by Duke until the 20th of February, 1885, on which day Martin conveyed to J. H. Milliken a half interest in the thirty-three sections conveyed therein. On the 10th of March, 1885, Duke, as president of the plaintiff corporation, also conveyed to Martin and J. H. Milliken eight other sections of land for the consideration as recited of the reconveyance to the company by Martin and Milliken of seven sections of the land conveyed to them by the first deed. The obligation referred to in the recitals of the first deed as a promissory note contained a provision that it was "collectible" in horses of a certain brand at $30 per head.

The court found that Duke was not authorized to convey the land on a credit without reserving the vendor's lien, and also that he had no authority to sell the land for a promise to pay money, which the promisors were entitled to discharge in horses at a stipulated price per head. The correctness of these conclusions is questioned by appellants. The question so raised is the leading one in the case.

There is a distinction to be kept in view between the authority of an agent or officer of a corporation to sell its real estate and the authority conferred by our statute upon the president to execute the conveyance to pass the title.   Rev. Stats., art. 600.   The authority merely to execute the instrument to complete a sale does not imply authority to make the sale.   For example, the president of one of our State banking corporations could not sell a building owned by the bank for the purposes of its lawful business without authority from its board of directors.   If, however, the board should make the sale themselves, or the president himself or other agent, under authority conferred by them, should do so, a conveyance executed by him as president under the seal of the corporation would pass the title.   The president of a corporation organized to acquire and sell lands may be constituted an agent to make sales, but like any other agent for that purpose he is restricted to the powers conferred upon him by the governing body.   In short, we must in this case distinguish between Mr. Duke as the president of the company and Mr. Duke as its agent.   In determining the extent of Duke's authority as agent we are of opinion that these principles must be recognized and applied:   First, the agent can not have authority to do that which the corporation has not the power to do; second, he must in case of a corporation under our general law derive his authority from the board of directors; third, the directors may confer the authority by by-law or resolution, or probably by a vote not entered of record; and fourth, when the power is conferred in neither of these methods it may be implied from a recognition and adopting of the agent's transactions or other acts on part of the directors which would reasonably induce third parties dealing with him to believe and to act upon the belief that he has authority to do the act in question.

The charter of the plaintiff corporation states its purpose to be "the acquisition by purchase or otherwise and the location and subdivision of lands, the management and leasing thereof, and the sale and conveyance of the same in lots and subdivisions or otherwise."

The by-laws contain the following provisions:

"The board of directors shall have the general management of the company.

"It [the board] may delegate all its powers fully or in part to one or several of its members.

"The lands of the company may be sold or leased for cash or on a credit, and at such times and on such terms as may be determined by the board of directors."

The majority of the directors seem to have resided in Paris, France, and to have held their meetings there, but the president resided and kept his office in Texas.   No express authority was shown which empowered that officer to make sale of the lands of the corporation, but it was proved that the persons who had successively held the office of

president had habitually exercised this power, and that their action had been recognized by the other officers of the corporation. But the evidence also showed that in no instance until the transaction in question had any president sold any land of the company upon a credit without retaining a lien upon it for the unpaid purchase money. It was also proved by a large number of witnesses that the invariable custom in selling lands in the country where those in controversy were situate was to retain a vendor's lien when the sale was made in whole or in part upon a credit.

From the fact that the presidents of the company were accustomed to sell its lands and that the proceeds were transmitted to France and divided among the stockholders it is necessarily implied that they were authorized by the board of directors to make sales. But is it to be inferred that they were empowered to make sales upon terms materially variant from those upon which such sales were uniformly made? We think not. "If the agency arises by implication from acts done by the agent with the tacit consent or acquiescence of the principal, it is deemed to be limited to acts of a like nature." McAlpin v. Cassiday, 17 Texas, 463.

In determining the question it is probable that the invariable custom of the country to retain the vendor's lien for securing the unpaid purchase money in the sale of lands should be looked to, though we are not prepared to say that such custom or the custom of the presidents of the company should control an express authority to sell upon other terms if such authority had been shown to exist. We think also that we should not lose sight of the fact that under our exemption and probate laws the vendor's lien is perhaps the only absolute security upon which one who conveys real estate upon a credit can rely for the performance of the vendee's obligation to pay. The custom of which we have heard so much in this case certainly tends to show that it was so regarded in the country where these lands are situate.

But should we be mistaken in this, there is another ground upon which it must be held that the court did not err in concluding that Duke exceeded his authority in making the transaction in question. The corporation was organized for the purpose of acquiring lands and for selling and conveying the same. It can hardly be held that the power to sell and convey carries with it a power to exchange them for personal property, and certainly not when as in this case the charter does not empower the corporation to acquire and hold such property for mere purposes of trade. Is it to be implied then from the facts in evidence in this case that any such authority was intended to be conferred upon Duke? A power to sell conferred by a natural person does not authorize the agent to barter the property. Reese v. Medlock, 27 Texas, 120; Trudo v. Anderson, 10 Mich., 357; Same Case, 81 Am. Dec., 795; Organ Co. v. Starkey, 59 N. H., 142; Lumpkin v. Wilson, 5 Heisk.,

555; Mfg. Co. v. Givan, 65 Mo., 89; Victor, etc., Co. v. Huler, 44 Wis., 265; Rogers v. Bass, 46 Texas, 505. It follows, then, that an agent who was authorized merely to sell upon a credit could not take for a deferred payment a written promise which the promisor had the election to discharge in anything but money. No express authority being shown for Duke to make this particular transaction, and no circumstances appearing from which such authority can be implied, it is clear that the conveyance was without authority and subject to be canceled as against all persons claiming under it. The rule is well settled that all persons dealing with a corporation must take notice of the powers conferred upon it by its charter, and that its agents can not exercise any authority in excess of these powers. Alexander v. Cauldwell, 83 N. Y., 480; Davis v. Railway, 131 Mass., 258; Seileman v. Railway, 27 Gratt., 119; Pearce v. Railway, 21 How., 441; Murphy v. Louisville, 9 Bush., 189. Therefore as to the want of authority to sell the land for a promise to pay money or deliver horses in the alternative, the question of actual notice may be laid out of the case.

But the court found that all the defendants had notice of Duke's want of authority to make the sale, and it is insisted that as to Martin and J. H. Milliken this finding was error. But except in certain cases persons dealing with an agent are bound to know the limitations upon his powers. If he has been held out as a general agent or as having a special authority which he does not in fact possess the rule does not apply. There was evidence to justify the conclusion that J. H. Milliken was interested with Martin in the original transaction, and that both knew it had been the uniform practice of the company to sell only for money and to retain a vendor's lien for the unpaid price when sales were made upon a credit. At all events they were not induced by any act of the plaintiff's officers into the belief that Duke had authority to do otherwise.

Many of the appellants' assignments of error present in various forms the questions we have discussed, and such need not be considered in detail. But there are others which require a disposition at our hands.

The appellants asked the trial judge to file his conclusions of law and fact, and now complain that the findings filed by him are insufficient upon two grounds: first, because the conclusions of law and the conclusions of fact are not distinct, but are blended together; and second, because the findings of fact are incomplete.

In Heirs of Ryon v. Rust, 65 Texas, 529, it is said: "If it should happen that some legal conclusion should be included in the findings of fact it certainly would not vitiate the whole statement of the judge." Again, it is held that when the conclusions of fact are not sufficiently full the omission should be called to the attention of the trial judge "by exception or motion, or in some other proper method." Railway v. Fossett, 66 Texas, 338. When there is in a case that is tried without

a jury a question of fact upon which the testimony is conflicting, and the trial judge has not filed his conclusions of fact, this court is bound to presume that his determination of the question has been such as will support the judgment, when in truth he may have made a contrary finding and has erred in a conclusion of law based upon it. In such a case the appellant fails to secure by his appeal a review of the determination of the legal question and a reversal of the judgment for error in the ruling, if error has been committed. It is for this reason, in part at least, that the statute provides that "upon a trial by the court the judge shall at the request of either of the parties also state in writing the conclusions of fact found by him separately from the conclusions of law." Rev. Stats., art. 1333. The duty is only devolved upon the judge when the request is made, and we are of opinion that when findings of fact have been put in writing and filed a party should not be permitted to complain of a failure to find upon any particular issue without a special request therefor. In the absence of such a request the presumption should be that the party complaining of the judgment has not been prejudiced by the court's omission. In this case there was no exception pointing out a failure to find upon any particular question of fact; nor was there a request for any additional finding.

It is also complained that the court erred in holding that the use of the lands should offset the interest on the purchase money actually paid in the transaction, and in decreeing that the plaintiff should repay the principal only. There was evidence to warrant the conclusion that the rent of the lands was equal to the interest on the money. The decree in this particular was a proper adjustment of the equities between the parties.

We think, however, there was error in so much of the decree of the court below as allowed the plaintiff corporation the period of two years and six months within which to repay to the defendants who were found entitled thereto the sum of money which was actually paid to Duke and which was used by the company. The practical effect of the judgment is to deprive the appellants of the land and at the same time to allow the appellee to pay back the consideration received for it at its own convenience. This is inequitable. We are of opinion that the most satisfactory decree which can be made in like cases is that the plaintiff shall recover the land upon condition that he pay the defendant the money received, and that upon his doing so he have his execution, but that should he fail to do so the defendant should be quieted in his title and possession. Consequently a time should be fixed at which the plaintiff's right to pay and recover the land should cease and be determined. A period of time may therefore be properly allowed, but the equity of the defendant demands that it should be short, and ordinarily neither the convenience nor the wants of the plaintiff should be allowed to affect the question. Such is the decree

in this case, except that the time allowed is unreasonably long.   Since the plaintiff in a suit of this character demands equity he should come prepared to do equity; and there may be cases in which the court should decline to enter a decree until the plaintiff has paid into court for the use of the defendant that which equity requires him to pay.

Accordingly the judgment in the particular mentioned will be reformed so as to require the appellee to repay the money received for the land within sixty days from this date, and as so reformed the judgment will be affirmed.   Appellee will be adjudged to pay the costs of the appeal.   And it is so ordered.

*Reversed and reformed.*

Delivered June 9, 1891.