SCHAUER v. SCHAUER.    (No. 839.)

(Court of Civil Appeals of Texas. El Paso. April 11, 1918. Rehearing Denied May 9, 1918.)

1. APPEAL AND ERROR ⚙⟶219(2)—FAILURE TO MAKE FINDING—REVERSIBLE ERROR.

Failure to make finding upon an issue does not present reversible error, where such failure was not called to the attention of the trial court.

2. PUBLIC LANDS ⚙⟶178(2)—LANDS OF STATE—SUBSTITUTED PURCHASER—FORFEITURE.

Where sale of public free school lands to original purchaser was valid, a substituted qualified purchaser, who was an actual settler upon the land at the time of purchase from original purchaser, acquired title by original purchaser's conveyance, although the transfer and substitute obligation were not filed in the general land office.

3. PUBLIC LANDS ⚙⟶173(21)—SALE—CANCELLATION—AUTHORITY OF LAND COMMISSIONER.

Land commissioner has no authority to cancel a sale of public free school lands for collusion.

4. ESTOPPEL ⚙⟶27(2) — BY DEED — GRANTOR AND PRIVIES.

If defendant, substitute purchaser of public free school lands, had filed in the general land office his transfer, together with the statutory affidavit negativing collusion and his substitute obligations for unpaid purchase price, the question of collusion could not be raised by plaintiff, subsequent purchaser, for the purpose of invalidating defendant's title.

5. PUBLIC LANDS ⚙⟶178(2)—TITLE—STATUTE OF LIMITATIONS.

Where forfeiture of sale to A. of public free school lands by land commissioner was unauthorized, a suit by B., a subsequent purchaser from A., against C., a prior purchaser from A., not filed until more than a year after award to A. and B., and more than a year after Acts 29th Leg. c. 29, §§ 1, 2 (Rev. St. 1911, arts. 5458, 5459), limiting time within which purchasers of such lands may sue therefor to one year, became effective, would be barred; statute being applicable in case of unauthorized forfeiture by land commissioner.

⚙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. PUBLIC LANDS ⊕173(21)—SALES—VALID-
ITY—DIRECT ATTACK.**

Since the state could recover from a sub-
stitute purchaser of public free school lands
only by a direct suit, an attempted forfeiture
of sale by land commissioner for collusion was
void.

**7. PUBLIC LANDS ⊕173(21) — SALE OF
SCHOOL LANDS—LIMITATIONS.**

The purpose of Acts 29th Leg. c. 29, §§ 1,
2 (Rev. St. 1911, arts. 5458, 5459), barring
suit by one claiming right to purchase public
school lands theretofore sold to another in one
year, is beneficent and should be liberally con-
strued, to the end that title to such lands may
not be subject to any uncertainty arising out
of an unauthorized forfeiture.

Appeal from District Court, Crockett Coun-
ty; J. W. Timmins, Judge.

Suit by Charles Schauer against Otto
Schauer. Judgment for defendant, and plain-
tiff appeals. Affirmed.

See, also, 185 S. W. 653.

Cornell & Wardlaw, of Sonora, for appel-
lant. Ed. J. Hamner, of Sweetwater, for
appellee.

## Statement of Case.

HIGGINS, J. This suit involves the title
to land originally belonging to the public
free school fund. It was brought by appel-
lant, Charles Schauer, against appellee, Otto
Schauer. The case was tried before the
court, and judgment rendered for defendant.
Charles Schauer appeals. A condensed state-
ment of the material facts found by the court
is as follows:

On January 22, 1901, Clarence Rotsman
applied to purchase the lands in contro-
versy, as an actual settler upon one of the
sections. He made the affidavit required by
law and filed his obligations for the unpaid
purchase money, and made the cash payment
as required by law. On April 19, 1901, the
commissioner of the general land office sold
and awarded the land to Rotsman on his said
application. Rotsman, in good faith, con-
tinued to reside upon and occupy one of the
tracts as a homestead, in every manner com-
plying with the law until May 5, 1902, when
he and his wife in due form conveyed the
lands to appellee, Otto Schauer. The convey-
ance was signed and acknowledged by de-
fendant, and defendant therein obligated
himself to pay all moneys due the state on
said lands. This conveyance was recorded
in the deed records of Crockett County on
May 21, 1902.

After the date of this conveyance, Rotsman
left the land and never thereafter occupied
the same. Before and at the time of afore-
said conveyance, Otto Schauer, with his wife,
entered upon the home section and have occu-
pied the same as their home ever since, and
are now so occupying the same. All interest
payments due upon the unpaid purchase
money to the state by Rotsman were made
up to the date of his conveyance to Otto
Schauer, and thereafter Otto Schauer made

all such interest payments, up to and in-
cluding the year 1909, when further pay-
ments were refused by the state. The sale
of the lands to Rotsman remained in good
standing in the general land office and the
account therefor on the books in state treas-
urer's office until January 28, 1910.

On January 28, 1910, across the face of
each of the obligations of Rotsman filed in
the general land office was written in red ink:
"Land forfeited for collusion and for failure
to occupy. J. T. Robison, Com. Dibrell
1/28/1910"—and on each of the accounts
kept with Rotsman in the state treasurer's
office was written in red ink, "Forfeited
1/28/10," and on said date the commissioner
of the general land office wrote a letter to the
clerk of the county court of Crockett county,
Tex., advising him that the sales of the lands
in suit to Rotsman had been canceled, and
requesting said clerk to make enteries on his
record showing such cancellation of said
date.

On January 28, 1910, Charles Schauer in
due form applied to purchase the land, his
applications being filed in the general land
office on January 31, 1910, and on February
15, 1910, the commissioner of the general
land office awarded the lands to him. In
due time and in due form, Charles Schauer
made and filed in the general land office
the affidavit of settlement required by the
law then in force. Charles Schauer complied
with the law as to settlement and occupancy,
and on March 5, 1913, filed his proof of
three years' continuous residence and oc-
cupancy, and on March 7, 1913, the commis-
sioner of the general land office issued to him
a certificate of occupancy which was filed for
record in Crockett county on March 19, 1913,
and duly recorded. All interest payments
due on the lands by plaintiff have been paid
and the sales to him appear in good standing
in the general land office, and his accounts
with the state are in good standing.

This suit was filed by Charles Schauer on
August 24, 1911, and is the first and only
suit ever filed between plaintiff and defend-
ant with reference to the title of said lands.
Other findings of fact were made, but they
are not pertinent to a consideration of any
of the questions presented by this appeal,
and it is unnecessary to state the same.

## Opinion.

The court below did not err in its finding
of fact that before and at the time of the
conveyance from Rotsman to defendant the
latter and his wife entered upon the home
section and have occupied the same as their
home ever since. The evidence abundantly
supports the finding. In fact, such fact ap-
pears from the record to have been admitted
by plaintiff.

[1] The court made no finding as to wheth-
er or not defendant was in collusion with

---

⊕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Charles Schauer, Sr., father of the plaintiff, at the time of the conveyance by Rotsman, and as to whether defendant was purchasing the land for Schauer, Sr. It does not appear that the failure to make a finding upon this issue was called to the attention of the trial court and that it refused to make a finding thereon. Upon this state of the record, this matter does not present reversible error. Fitzhugh v. Land Co., 81 Tex. 306, 16 S. W. 1078; Hensley v. Lewis, 82 Tex. 595, 17 S. W. 913; Hatton v. Lbr. Co., 57 Tex. Civ. App. 478, 123 S. W. 163; Veatch v. Gray, 41 Tex. Civ. App. 145, 91 S. W. 325. However, under our views, this issue is immaterial, and it will be assumed that defendant was in collusion with Schauer, Sr.; the latter being interested in the purchase by defendant of the land from Rotsman.

[2] Upon the facts found, the sale to Rotsman by the state was valid. Defendant, being a qualified purchaser and an actual settler upon the land at the time of his purchase from Rotsman, acquired title by Rotsman's conveyance. It was not essential that he file his transfer and substitute obligations in the general land office. His failure so to do did not defeat his title. Taylor v. Burke, 66 Tex. 643, 1 S. W. 910; Lee v. Green, 24 Tex. Civ. App. 109, 58 S. W. 847; Payne v. Cox, 143 S. W. 336.

[3] Conceding that defendant was in collusion with Schauer, Sr., when he purchased from Rotsman, this did not authorize the commissioner of the general land office to forfeit the sale on that account. The land commissioner has no authority to cancel for collusion. Salgado v. Baldwin, 105 Tex. 508, 152 S. W. 165. The other reason assigned for the forfeiture, namely, "failure to occupy," is shown by the trial court's finding to have been unauthorized, because as a matter of fact the land had been occupied by Rotsman and defendant in compliance with the law. Johnson v. Bibb, 32 Tex. Civ. App. 471, 75 S. W. 71; Chambers v. Rawls, 158 S. W. 208.

[4] It is apparent that the only possible defect in the defendant's title is that arising out of the fact that when he acquired the land from Rotsman he was in collusion with Schauer, Sr., who was interested in the purchase. If defendant had filed in the general land office his transfer, together with the statutory affidavit negativing collusion, and his substitute obligations for the unpaid purchase money, and the same had been accepted by the land commissioner, it is settled that the plaintiff could not raise the question of collusion for the purpose of invalidating defendant's title. Logan v. Curry, 95 Tex. 664, 69 S. W. 129.

But this was not done by defendant, and it may be that, in the absence of a showing of a due substitution in the general land office, an adverse claimant under a subsequent purchase may raise the question of collusion. Hanna v. Robison (Sup.) 128 S. W. 108.

[5] We make no decision upon that question, as it is not necessary, believing that the plaintiff's suit is barred by the Act of the 29th Legislature, c. 29, which reads:

"Section 1. Be it enacted by the Legislature of the state of Texas: That hereafter all persons claiming the right to purchase or lease any public free school lands, or any lands belonging to the State University, or either of the state asylums which have been heretofore or which may be hereafter sold or leased to any other person under any provision of the law authorizing the sale or lease of any of said lands, shall bring his suit therefor within one year after this act goes into effect, or after the date of the award of such sale or lease, if such award is made after the taking effect of this act, and not thereafter.

"Sec. 2. If no suit has been instituted by any person claiming the right to purchase or lease any of said land within the period of time limited in the first section of this act, it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands have been complied with; provided that nothing in this act shall be construed to effect the state of Texas in any action or proceeding that may be brought by it in respect to any of said lands."

In the Revised Statutes which became effective September 1, 1911, this law, with some change of verbiage, appears as articles 5458, 5459. The law quoted above became effective in 1905. Now, upon the facts found, it appears that the land was originally sold and awarded April 19, 1901. The sale remained in good standing until January 28, 1910, when the land commissioner made an unauthorized forfeiture.

This suit is by a subsequent purchaser, and was not filed until more than a year had elapsed after the law of 1905 had become effective and after the award to defendant's vendor, and also more than a year after the award made to plaintiff. The plaintiff is claiming that he had the right to purchase and did purchase the land by virtue of his applications filed in the general land office on January 31, 1910, and the award to him made February 15, 1910. His right necessarily depends upon the existence of some fact which defeated the title theretofore acquired by defendant.

Conceding that the question of collusion can be raised by plaintiff, and that it would defeat the defendant's title, it nevertheless appears that the suit has not been brought within the time limited by the first section of the act of 1905. In Slaughter v. Terrell, 100 Tex. 600, 102 S. W. 399, this law was construed, and the court said:

"In order to ascertain what the Legislature intended by the enactment of this law, we must consider the evil that existed, and determine what the remedy was to be. Under the law as it previously existed, purchasers of school lands were liable to have their titles attacked by third persons who desired to purchase the land, and such persons might call in question the qualification of the purchaser as well as the performance of conditions prescribed by law, for example, that when the purchase was

made the purchaser did not actually reside upon the land, or that he did not intend to make it his home, and thus, although the state recognized his right, the purchaser was constantly exposed to such attacks. This rendered such titles uncertain, and to remedy that evil the Legislature enacted the law now under consideration, which requires that any person who desires to purchase land theretofore purchased by another shall bring his suit to set aside the former purchase within twelve months of the award of it, or he will be barred. Clearly this applies only to cases where the state recognizes the validity of the purchase being attacked, and does not apply to a case like the present, where there has been a forfeiture of the former purchase by the land commissioner, and the land again put upon the market. There is no necessity for a suit by a purchaser of forfeited land; indeed, to so hold would be to say that the commissioner had the power to declare the forfeiture, although the award may have been made many years before that time, and the power to sell the land, but that the purchaser at the second sale could not get possession of the land because his suit could not be brought within a year from the award to the first purchaser which had been forfeited. Such an absurd result is a sufficient answer to the contention for that construction."

It will be noted that it is said that the statute applies only to cases where the state recognizes the validity of the purchase attacked, and does not apply to a case where there has been a forfeiture of the former purchase by the land commissioner, and the land again put upon the market. This language is broad enough to exclude the idea that the present case falls within the statute, but it must be remembered that the language was used upon a state of facts showing an authorized forfeiture. Here the forfeiture was unauthorized.

[6] The only ground upon which the state could recover from Otto Schauer is collusion. It could recover upon that ground in a direct suit only, and no such suit has been instituted. The state, so far as its authorized officers are concerned, has not questioned the validity of his title arising out of collusion. The act of the land commissioner in attempting to forfeit upon that ground was not authorized by the state. It has withheld such authority from the land commissioner. Salgado v. Baldwin, supra. The attempt to forfeit for collusion was a complete nullity. It did not invalidate defendant's title. Smithers v. Lowrance, 100 Tex. 77, 93 S. W. 1064.

To deny the applicability of the act in cases of unauthorized forfeitures by the land commissioner would expose the purchasers of school lands to all of the uncertainties of title which, in Slaughter v. Terrell, it was said by Judge Brown it was the intention of the Legislature to dispel.

[7] The purpose of the statute is beneficent. It should be liberally construed to the end that title to free school lands may not be subject to any uncertainty arising out of unauthorized forfeitures. The rights of the state are fully protected by the proviso in the second section. There is nothing to prevent it from instituting a proceeding by its proper authorities to recover this land on account of collusion. Since it has withheld from the land commissioner the authority to cancel for collusion, it should not be considered that the unauthorized assumption of such power would remove a case from the operation of the act of 1905. The attempted exercise of the right to forfeit for collusion was an unofficial act and could not prejudice the rights of Otto Schauer, who held under Rotsman. Smithers v. Lowrance, supra.

In other words, the holder of title to school land cannot be deprived of the protection of the statute simply by an authorized and void forfeiture declared by the land commissioner. The language of this statute renders it very difficult of interpretation. The construction placed upon it is in harmony with the view of Judge Brown, that it was intended to remedy the evils incident to uncertainty in the title to school lands. This construction protects the right of the state in a proceeding brought by its authorized representatives to attack for collusion any school land title which was collusively acquired; it protects a subsequent purchaser where there has been an authorized forfeiture by the land commissioner; and it further protects original purchasers against unauthorized and void forfeitures declared by the land commissioners which otherwise would deprive them of the protection of the act of 1905.

Upon the former appeal of this case it was reversed, because the trial court excluded evidence offered by Otto Schauer (appellee here), to prove that the forfeiture of the Rotsman purchase was illegal and void. The court said:

"Hence we conclude that the trial court committed error in holding that appellant had no right to prove facts which would show that the alleged forfeiture of the Rotsman title was *illegal and void.* If the facts were as appellant offered to show, *then the Rotsman purchase was not subject to forfeiture by the commissioner of the land office, and appellee acquired no right when he attempted to purchase the land, and when the commissioner of the land office attempted to award it to him.* If the Rotsman purchase was legally canceled, then the statute construed in Nations v. Miller, supra [146 S. W. 261], will apply, and cut off appellant's right to assail appellee's purchase." (Italics ours.) 185 S. W. 653.

This language shows the important distinction between authorized and unauthorized forfeitures made by the land commissioner, and clearly recognizes the fact that if the forfeiture was unauthorized it was void, and appellant, Charles Schauer, acquired no right under his attempted purchase in 1910. It distinctly holds that if the forfeiture was legally made then the act of 1905 applied, and precluded appellee, Otto Schauer, from assailing Charles Schauer's title. Upon the view expressed upon that appeal, it would seem to follow that if the

forfeiture was illegally made then Otto Schauer would be protected by the statute, although that question was not directly passed upon.

From what has been said, it follows that plaintiff Charles Schauer's suit was barred by the act of 1905, and the judgment should be affirmed.

Affirmed.