**PETTY et al. v. PAGGI BROS. OIL CO. et al. (No. 771.)**

(Court of Civil Appeals of Texas. Beaumont. March 2, 1922. Rehearing Denied May 3, 1922.)

1. Boundaries &#8665;37(3)—Evidence sustained finding locating corner.

Evidence *held* to sustain finding locating the southwest corner of a tract, and then locating the southwest corner of another tract by its calls for courses and distance from the southwest corner of the former.

2. Boundaries &#8665;33—Where corners located by calls for iron pipes, inference of actual survey arises.

Where all four corners of a tract were located by calls for iron pipes, an inference of actual survey arises.

3. Boundaries &#8665;3(6)—Actual location of calls for corners and a line placed on ground by grantors controls area.

Where grantors in making a deed for one acre calls for corners and a line which he himself had placed on the ground with the location of which he was familiar, and which can be located, a judgment extending the one acre to such calls must be sustained.

On Rehearing.

4. Appeal and error &#8665;931(7)—Presumption on appeal that issues raised by evidence were decided.

Where an issue was raised by the evidence, necessary to support the judgment as rendered, it will be presumed on appeal, that the court resolved that issue in favor of the successful party.

Error from District Court, Hardin County; J. L. Manry, Judge.

Action by V. A. Petty and others against the Paggi Bros. Oil Company and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Sonfield, Nall & King and Oliver J. Todd, all of Beaumont, for plaintiffs in error.

C. A. Lord and Thos. J. Baten, both of Beaumont, for defendants in error.

WALKER, J. Though in form of trespass to try title, in fact the purpose of this suit was to locate the boundary line between a 15-acre tract claimed by plaintiffs in error and a one-acre tract claimed by defendants in error. Only about three-fourths of an acre of land was involved, but, as about $450,000 worth of oil was removed from the disputed strip, it appears that this suit is of great moment to the interested parties. The land in controversy is situated in Hardin county.

On the 10th day of October, 1903, plaintiffs in error were claiming to own a 20-acre tract of land, referred to in this opinion as the Herrington tract, as a part of the C. F. S. Jordit survey. Marie Ogden, O. S. Kennedy, and others were claiming it as a part of the Ximines grant, a much older title. It was their theory that the older Ximines grant was located in that part of Hardin county, and that the Jordit was subsequently laid on the Ximines. On the trial of this cause it was admitted that the Jordit did not conflict with the Ximines, and that the plaintiffs in error, in fact, on the 10th day of October, 1903, owned the true title to all the Herrington tract. But on that date, as both titles were being asserted, the respective claimants, in settlement of their adverse interests, divided the Herrington tract among themselves in the following proportions: Marie Ogden and the other holders of the Ximines title deeded to plaintiffs in error 15 acres off the east end, and by the following description:

"A tract of fifteen (15) acres of land being the eastern fifteen (15) acres of and a part of the twenty (20) acre tract on the south boundary line of the said C. F. S. Jordit survey which was conveyed by H. B. Mitchell to B. F. Herrington by deed dated the 26th day of December, A. D. 1896, which deed is recorded in Book 'S' on page 457 of the Deed Records of Hardin county, state of Texas, said deed and the record thereof being hereby referred to for a full description of the said twenty-acre tract.

"The said fifteen (15) acre tract of land hereby conveyed out of said twenty-acre tract is described as follows: Beginning at an iron pipe in the south line of said Jordit survey at the southeast corner of said twenty (20) acre tract, from which a holly 5 inches in dia. bears S. 75° E. 5 varas; thence west with the south boundary line of said Jordit survey 321 varas to an iron pipe for corner; thence north 264 varas to an iron pipe in the south line of a 35½-acre survey made for G. W. Taylor on

---

said Jordit survey; thence east with the south line of said G. W. Taylor tract 321 varas, to an iron pipe at the northeast corner of the said twenty-acre tract; thence south with the east boundary line of the said twenty-acre tract 264 varas to its southeast corner the place of beginning."

Plaintiffs in error deeded to Marie Ogden and others four acres out of the west end by the following description:

"A tract of four (4) acres of land being the western four (4) acres, out of, and a part of, the twenty (20) acre tract on the south boundary line of the said C. F. S. Jordit survey, which twenty (20) acres was conveyed by G. B. Mitchell to B. F. Herrington by deed dated the 26th day of December, 1896, which deed is recorded in Book 'S' on page 457 of the Deed Records of Hardin county, state of Texas, said deed and the record thereof being hereby referred to and for a full description of the said twenty (20) acre tract, the said four (4) acres of land out of said twenty-acre tract hereby conveyed is described as follows: Beginning at the southwest corner of the said twenty-acre tract; thence east with the south boundary line of the said Jordit survey and said twenty-acre tract, eighty-five and three-fifths (85⅗) varas to a point in said line; thence north 264 varas to the south line of a thirty-five and one-half (35½) acre survey on said Jordit survey made for G. W. Taylor, and being also in the north line of said twenty-acre tract; thence west with the south boundary line of the said G. W. Taylor survey and the north B. line of said twenty-acre tract 85⅗ varas to the northwest corner of said twenty-acre tract, which is also the southwest corner of said Taylor survey; thence south with the west line of said twenty (20) acre tract 264 varas to its southwest corner, the place of beginning."

And plaintiffs in error also deeded to O. S. Kennedy one acre between the Ogden 4 acres and the 15 acres by the following description:

"A tract of one (1) acre of land, out of and a part of the twenty (20) acre tract on the south boundary line of the said C. F. S. Jordit survey, which twenty acres (20) was conveyed by H. B. Mitchell to B. F. Herrington by deed dated the 26th day of December, 1896, which deed is recorded in Book 'S' on page 457 of the Deed Records of Hardin county, state of Texas, said deed and the record thereof being hereby referred to for a full description of the said twenty (20) acre tract.

"The said one (1) acre of land hereby conveyed out of said twenty (20) acre tract is described as follows: Beginning at a point on the south boundary line of the said C. F. S. Jordit survey and of said twenty-acre tract, which point is eighty-five and three-fifths (85⅗) varas east of the southwest corner of the said twenty (20) acre tract; thence east with the said south boundary line twenty-one and two-fifths (21⅖) varas to another point on the said S. B. line of said twenty-acre tract and of said Jordit survey, which point is the southwest corner of a fifteen-acre tract out of said twenty-acre tract, which has been conveyed by said Oliver S. Kennedy and others to the vendors herein; thence north with the west

line of the said fifteen (15) acre tract 264 varas to the north boundary line of said twenty (20) acre tract, and the south boundary line of the G. W. Taylor 35½-acre survey on said Jordit survey; thence west with the division line of said twenty-acre tract and said Taylor tract, twenty-one and two-fifths (21⅖) varas to a point on said line; thence south with a line parallel to the east and west B. lines of said twenty-acre tract, and of said Jordit survey, 264 varas to a point on the south line of said twenty-acre tract, the place of beginning."

The Herrington tract is described as follows:

"Beginning in the south boundary line of a 320–acre survey in the name of C. F. S. Jordit at a point directly south of the southwest corner of a survey of 35½ acres made out of the said Jordit, for G. W. Taylor and now owned by W. F. Cotton; thence east 428 varas to a stake for corner from which a holly 5 in. in dia. brs. S. 75° E. 5 varas; thence north to the south boundary line of the G. W. Taylor or Cotton survey, stake for corner; thence west with the south boundary 35½-acre survey 428 varas to corner; thence south to the place of beginning."

There is nothing on the ground to indicate the location of the southwest corner of the Taylor tract called for in the Herrington field notes. But W. F. Cotton, a witness for defendants in error, testified as follows on the location of that corner:

"I bought and acquired the 35½-acre tract known as the G. W. Taylor tract or W. F. Cotton tract in 1888. Of the tract I still own the west 15½ acres. As the owner of this 35½-acre tract I know where the southwest corner of the 35½-acre G. W. Taylor tract is. I have known that ever since I acquired it, back in 1888. I went with Geo. W. White, county surveyor of Jefferson county, to this southwest corner of the Taylor tract. I do not remember what month it was now but it was some time during last year. I think though it was in the latter part of the summer now of last year.

"I showed Mr. White that point that I have known as the southwest corner of the tract all these years. * * * The iron stake that I saw and recognized as the southwest corner of the Herrington 20-acre tract was at the end of the west line of the Herrington tract that I have known for many years. There are some posts marking the line through there indicating it when I was there with Mr. White as extending along the west line. There had been an old fence there.

"I know about that old fence there, when it was put there and how come it up there—this is, I mean those posts. The Rio Bravo Oil Company had them posts put there. * * * It must have been somewhere about 1902 or 1903. They had a barb wire fence there. I do not remember how long that barb wire fence was kept up there as constructed by the Rio Bravo Oil Company, but it stayed there until the rust ate the wire up.

"Q. State whether or not the fence along the west end of the Taylor or Cotton 35½-acre tract if extended southward would coincide with the old fence along the west end of the Her-

rington tract—that is, how did the line, the fence lines of the west end of the Taylor tract, conform or adapt itself to the line along the west end of the Herrington tract? A. Why, it runs straight as far as I could tell. Q. So that, if the old fence along the west line of the Herrington tract was extended northward, would it coincide with the fence on the west side of the Taylor tract? Would or not such a fence as I have described pass through the southwest corner of the Taylor tract that you have described? A. Yes; such a fence that I have described would extend along the west side of the Taylor tract before I got to this corner known as the southwest corner of the Taylor tract. It would pass right by it.

"Now, speaking, of this southwest corner of my tract, there was a stob of some description there to mark that corner when I first knew it. I do not remember now just what it was there to mark my northwest corner. * * * You say at the southwest corner there were no bearing trees but just a stob; well, there were bearing trees there. If I am not mistaken there were bearing trees there. They are not there now.

"There is a wooden stob at my corner. My southwest corner was indicated by a wooden stob. You ask me if I ever saw a wooden stob at the southwest corner of the Herrington tract. Well, I do not remember what was put, there when that line was run."

Mr. Cotton further testified with reference to the Taylor tract:

"I bought that property there in 1888. As to whether Judge Pedigo had run the lines and the survey was already run out when I bought in 1888—well, my tract of land was I know."

He further testified that he was with the surveyors when the lines of the Taylor were originally run, but did not go around with them. His testimony shows that he was in position to know the actual location of the southwest corner of the land claimed by him from the date it was placed on the ground. He bought it from Taylor.

[1] The trial court accepted as true Cotton's testimony locating the southwest corner of the Taylor tract, and then located the southwest corner of the Herrington tract, which was the beginning corner of that tract, by its calls for course and distance from the Taylor southwest corner. We must sustain him in that finding. Cotton's testimony locating the southwest corner of his land comes clearly within the rule announced in Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 122, and the cases therein cited, and is sufficient within itself to sustain the finding. We recognize that plaintiffs in error made a strong case against that location, but the court's finding was against them.

On the court's location of the southwest corner of the Herrington tract, all the oil wells fall on the land of defendants in error, even if we accept the construction of the Kennedy deed as advanced by plaintiffs in error. But on the trial court's location of the southwest corner of the Herrington tract, if the Kennedy deed were construed as conveying only one acre—and that is the contention of plaintiffs in error—a small strip of land remains undisposed of.

[2, 3] We believe the trial court's judgment awarding the land in controversy to defendants in error must be sustained on a proper construction of the three deeds above described, dividing the Herrington tract among the different claimants. The 15-acre tract calls to begin at a corner about which there is no dispute. All four corners of that tract are located by calls for iron pipes. Certainly on such calls a strong inference of an actual survey arises and must control, unless rebutted by testimony. Dr. J. H. Reagan, one of the plaintiffs in error, testified on that issue that he was a party to the controversy between the Jordit and Ximines titles when the settlement was made, and joined in the execution of the deeds. He further testified that he did not have any survey made prior to the making of those deeds, but he does not say that he had charge of the settlement or knew anything about a survey. Such evidence has very slight probative force, but, even if his testimony had been positive and to the effect that no survey had been made, it would only have made an issue against the inferences arising from the calls in the deed, and the trial court was at liberty to find against his version of what was done. Now, as plaintiffs in error in making the deed to Kennedy call for corners and a line which they themselves had placed on the ground, with the location of which they were familiar, and which can now be located, the judgment of the trial court extending the Kennedy one acre to those calls must be sustained. Polk v. Reinhard (Tex. Civ. App.) 193 S. W. 687.

By accepting the theory of plaintiffs in error that there was no actual survey of the 15-acre tract, and locating the southwest corner of the Herrington tract at the point contended for by them, about 7 varas west of the court's location, yet we believe the judgment of the trial court should be affirmed. In making the settlement, plaintiffs in error admit that all parties dealt with the Herrington tract on the belief that it contained 20 acres. There is no suggestion that any of them had in mind a possible excess. The quantity of land called for in the three settlement deeds was 20 acres—15 acres in one, 4 acres in another, and one acre in the third. The south boundary line of the Herrington tract, by its call, was 428 varas long. This line was divided among the three tracts as follows: The south boundary line of the 15 acre tract began at the southeast corner of the Herrington tract, about which there is no dispute, and ran west 321 varas; the south boundary line of the Ogden tract began at the southwest cor-

ner of the Herrington tract and ran east 85⅝ varas; the south boundary line of the Kennedy tract began at that point—that is, the southeast corner of the Ogden tract— and ran east 21⅝ varas to the southwest corner of the 15-acre tract, making the total length of the three south boundary lines 428 varas. The three tracts call for each other, and by their calls are all inclusive of the Herrington tract, the Kennedy tract, by its calls, occupying all the space between the 4-acre tract on the west and the 15-acre tract on the east. After the settlement, plaintiffs in error and the Ximines claimants were jointly sued for the 20 acres. Plaintiffs in error answered, disclaiming as to all of the tract except the 15 acres received by them in the settlement. Also they leased their 15 acres to the Sun Company, which company took possession of the land and marked the lines and corners at the point fixed by the trial court in his judgment. On these facts we cannot escape the conclusion that an inference must arise that plaintiffs in error in executing the 4-acre deed and the 1-acre deed, intended to dispose of all of the 20-acre tract except the 15 acres conveyed to them by the Ximines claimants. And as the Kennedy tract lies between the 15-acre tract and the 4-acre tract, and by its calls occupies all the land between those two tracts, the inference also arises that it was the intent of plaintiffs in error, in executing the Kennedy deed, to convey, to him all of the Herrington tract not included in the 4-acre tract and the 15-acre tract.

The trial court's conclusions on the issues of election and estoppel are without support in the record. On the theory that the land in controversy was not included in the Kennedy deed, he found that defendants in error should recover on the issues of innocent purchaser and 5-year limitation. These conclusions are also without support. If, in fact, the land was not a part of the Kennedy tract, no issue of innocent purchaser or five-year limitation was raised. Nor do we agree with the trial court's conclusion that "it should be held that the greatest quantity of land that the description used in the deed can convey, should be held to have been conveyed rather than any less amount of land." But, as his findings which we have just sustained dispose of the case, the conclusions just mentioned become immaterial.

The judgment of the trial court is in all things affirmed.

On Rehearing.

[4] Plaintiffs in error advance the proposition that we are in error in concluding that the trial court found as a fact that the 15-acre tract was actually surveyed and the lines and corners marked on the ground. We have carefully examined the conclusions of fact filed by the trial court, and believe the proposition is well taken, and now say that the trial court made no separate finding on the issue of an actual survey. But the fact that the trial court made no such finding does not detract in the least from the conclusions reached by us in our original opinion. The issue was clearly raised by the evidence, and, if necessary to support the judgment as rendered, we will presume that the trial court resolved that issue in favor of defendants in error. Thomas v. Quarles, 64 Tex. 493; Malone v. Fisher (Tex. Civ. App.) 71 S. W. 996; National Live Stock Ins. Co. v. Warren (Tex. Civ. App.) 181 S. W. 790; Fitzhugh v. Land Co., 81 Tex. 306, 16 S. W. 1078; Schauer v. Schauer (Tex. Civ. App.) 202 S. W. 1010; Drake v. Davidson, 28 Tex. Civ. App. 184, 66 S. W. 889; Cattle Co. v. Burns, 82 Tex. 58, 17 S. W. 1043.

In our original opinion we said:

"He (referring to the witness Cotton) further testified that he was with the surveyors when the lines of the Taylor were originally run."

Here we referred to the Taylor tract when we should have referred to the Herrington.

We have given the motion for rehearing our most careful consideration, and have re-examined the testimony in the record, and are of the opinion that the case was correctly disposed of in our original opinion. The motion for rehearing is therefore in all things overruled.