MORGAN v. WASHBURN LUMBER CO. et al. (No. 1440.)*

(Court of Civil Appeals of Texas. Texarkana. Nov. 26, 1915. Rehearing Denied Dec. 9, 1915.)

1. CORPORATIONS ⊚⇒404 — AUTHORITY OF PRESIDENT—CONTRACT TO SELL LANDS.

Under the law of Louisiana as well as this state, the president of a corporation has no au-

thority to contract for the sale of corporation lands, in the absence of authority conferred on him by the directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1626–1628, 1633–1639; Dec. Dig. ☞404.]

2. CORPORATIONS ☞432 — AUTHORITY OF PRESIDENT—EVIDENCE.

Evidence *held* insufficient to show that defendant corporation held out its president as its agent having authority to contract for the sale of its lands.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

3. CORPORATIONS ☞432—CONTRACT BY PRESIDENT—RATIFICATION—KNOWLEDGE.

The evidence did not show ratification by a corporation of a contract by its president to sell its lands, where it did not show knowledge of the corporation, through some other officer or agent beside the president, of the facts relating to the transaction.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. ☞432.]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Action by W. H. Morgan against the Washburn Lumber Company and others. From a judgment for defendants, plaintiff appeals. Affirmed.

This was a suit for the specific performance of a contract, made in the state of Louisiana, to convey land in this state, or, in the alternative, for damages for a breach of the contract. It was by appellant as plaintiff against appellees, the Washburn Lumber Company, a corporation under the laws of Louisiana, T. E. Stephenson, and Paul J. Leidigh. The contract, dated September 8, 1913, was as follows:

"We have this day agreed to sell to W. H. Morgan the Francis Jordan and P. R. Wilson survey in Texas (640 acres, more or less), now owned by us, for the sum of $2,040.00, to be paid as follows: $1,040 cash, balance of $1,000 in one note, due two years from date, with 8 per cent. interest. $5.00 paid on the above which is hereby acknowledged.

"Washburn Lbr. Co.
"T. E. Stephenson.
"W. H. Morgan."

The contract was executed on behalf of the lumber company by Stephenson, the president thereof. As we understand it, appellant is not in the attitude of contending on this appeal that Stephenson personally was liable on the contract. Leidigh, it seems, was made a party defendant because the lumber company, subsequently to the date of the instrument set out above, conveyed the land in question to him.

The trial was to the court without a jury. The appeal is from a judgment determining that appellant was not entitled to judgment decreeing a specific performance of the contract, nor to a recovery of damages for its breach, because it appeared that Stephenson was without authority to make it on behalf of the lumber company, but further determining that the lumber company was indebted to appellant in the sum of $782 "for tim-

ber and $5 advanced on the contract for amounts before and since the making of said contract by Stephenson," and awarding a recovery in appellant's favor against the lumber company for said sum of $782.

Brooke & Woolworth, of Carthage, for appellant. H. N. Nelson, of Carthage, and J. C. Pugh, of Shreveport, La., for appellees.

WILLSON, C. J. (after stating the facts as above). In support of his first assignment, that the judgment is erroneous in so far as it denied him relief by specific performance, or, in the alternative, by damages, appellant insists:

[1] 1. That the undisputed evidence showed that Stephenson was the president of the lumber company—

"and had full power and authority to sell lands and make contracts with reference to lands belonging to said company at the time the written contract was entered into."

The contention is supported by the record to this extent only: That it was shown that Stephenson was the lumber company's president, and as such acted for it in making the contract. It was not shown that as such president he was authorized to bind the company by a contract to sell its lands. On the contrary, it was shown that under the laws of Louisiana, in the absence, as was the case, of authority conferred upon him by the company's board of directors, he was without power, merely because he was the president of the company, to bind it by such a contract. And such is the rule in this state. Fitzhugh v. Franco-Texas Land Co., 81 Tex. 311, 16 S. W. 1078; Hurlbut v. Gainor, 45 Tex. Civ. App. 591, 103 S. W. 409; Aransas Pass Harbor Co. v. Bank, 28 Tex. Civ. App. 372, 67 S. W. 906. It was not pretended that he was the agent of the company in any other way than as its president and general manager of its sawmill business.

[2] 2. That the undisputed evidence showed that the lumber company held Stephenson out as its agent with power and authority to sell its lands and to make contracts binding it to sell same. This contention is based on testimony showing that Stephenson was the president and general manager of the lumber company's business, which was the operation of a sawmill, and as such, a witness testified, "looked after the whole business around there." It was not shown, however, that Stephenson ever, either before or after he entered into the contract with appellant, undertook to bind the company by a contract to convey its lands, or that the company ever did or said anything which justified appellant in believing it was in the attitude of holding Stephenson out as possessing such authority, unless it was the transaction with one Luttrell. With reference to that transaction Luttrell testified:

"I have had dealing with Mr. Stephenson in the buying of land from him and contracting with him to buy land from the Washburn Lum-

ber Company. These contracts were afterwards performed. First we had an understanding in regard to a piece of timber—the land with the timber—I was to pay him a certain price for it; and after we cut the timber, some time, possibly a year, Mr. Stephenson and Mr. Leidigh and myself were riding around over the woods one day, and we got back on this piece of land; and I called their attention to it and told them that I would like to buy this land; that I would like to have a deed to it. Of course, there were several remarks made about it. They questioned me as to what I wanted to do with it—I had theretofore entered into a verbal contract with them. So, after going over the thing at some length, Mr. Leidigh remarked to Mr. Stephenson that he guessed 'we had better sell it to him,' or words to that effect; that is, he gave his consent, you know, and showed to Mr. Stephenson that he was willing to make this transfer. That was before making the deed. The deed was not made on the same terms as the original agreement. The first agreement was $2.50 an acre, and the next one was $4.50. They refused to carry out the agreement so far as the $2.50 was concerned, but agreed to sell it for $4.50. The Washburn Lumber Company made me a deed, and so the transaction was completed."

On his cross-examination Luttrell further testified:

"I did not get my deed then. It was through the unanimous vote of the board of directors that I got the deed."

It is obvious, we think, that the testimony referred to—and there was none other of greater probative force—did not raise an issue as to whether the lumber company was in the attitude of being estopped ·from denying that Stephenson, as its agent, was authorized to bind it by a contract to sell its lands or not. The trial court should, as he did, have determined as a matter of law that the lumber company was not in that attitude.

[3] 3. That the undisputed evidence showed that at the time the contract was entered into the lumber company owed appellant $787, which it then agreed to apply as a cash payment on the land, and which it refused thereafterwards to pay to appellant. It is argued from this alleged state of the evidence that it appeared that the lumber company had ratified and made its own the act of Stephenson on its behalf when he executed the contract. While it, perhaps, is of no importance in determining the question made, it may be said, in passing, that the evidence was not undisputed that the lumber company owed appellant $787 at the time stated. The testimony was, by Stephenson, that the company then owed appellant $446, and by appellant that it owed him "some $400 or $500." Nor was it undisputed that it was then agreed that the sum due appellant by the company should be applied as a cash payment on the land. While appellant testified it was so agreed, Stephenson testified that:

"There was nothing said about applying the money we owed him [appellant] as a cash payment. The paper shows it to be a cash transaction."

There was no evidence that any other officer or agent of the lumber company than Stephenson ever knew, until appellant's suit was commenced, that Stephenson had entered into the contract in question with appellant, or had received for it from appellant anything as a payment on the land. In the absence of evidence of knowledge on its part, through some other of its officers or agents than Stephenson, of the facts in regard to the transaction, an issue as to its ratification of the contract did not arise. Cowan v. Sargent Mfg. Co., 141 Mich. 87, 104 N. W. 377; 1 Corpus Juris, 476.

The other assignments in the brief have been, in effect, disposed of by the rulings made.

There is no error in the judgment, and it is affirmed.

