**REPUBLIC NAT. BANK & TRUST CO. v. ASBURY.**

No. 11884.

Court of Civil Appeals of Texas. Dallas. Feb. 8, 1936.

Rehearing Denied March 7, 1936.

Eugene De Bogory, Pat H. Candler, and Owen T. Lewis, all of Dallas, for appellant.

Harold B. Sanders, of Dallas, for appellee.

LOONEY, Justice.

E. W. Asbury (appellee) sued the Republic National Bank & Trust Company (appellant) to recover the sum of $700 and interest, alleged to be the amount due appellee as a commission for services in effecting a contract for the sale of real estate by the bank to J. M. Haggar. The issues framed by pleadings will be sufficiently revealed during the discussion. Answers of the jury to the issues submitted were altogether favorable to appellee, for whom the court rendered the judgment from which the bank appealed.

The questions discussed were properly raised and briefed by the parties. One of appellant's contentions is that appellee was not entitled to judgment, in that he failed to effectuate a contract of sale between the bank as seller and Haggar as purchaser; that the instrument executed by John E. Owens, vice president of appellant, purportedly for and on its behalf, was not an acceptance of the offer previously made by Haggar to purchase real estate, but was simply a counter proposition submitted to Haggar, which he did not accept; hence no contract for the sale of the real estate in question by the bank to Haggar was consummated.

The salient facts are these: On August 27, 1933, appellee and his associate, Mr. Cunningham, procured from J. M. Haggar an offer in writing to purchase from appellant a part of block 73 of the city of Dallas, at $14,000, to be paid as follows: $6,500 cash and a first lien note for $7,500, due three years after date, bearing 6 per cent. interest; attached to the proposal was Haggar's check for $1,000 as earnest money. This offer was on a printed form used in consummating such contracts; the blanks being appropriately filled in, so as to adapt it to the transaction in hand, containing, among others, the following written-in provisions: "Upon the consummation of the within contract, seller herein agrees to pay a cash commission of five (5%) per cent of the gross sales price to A. P. Cunningham and E. W. Asbury, agents" (Cunningham disclaimed any interest in the cause of action, testifying that the same belonged exclusively to appellee). Appellee delivered Haggar's offer to Mr. John E. Owens, one of appellant's vice presidents, who at the time was at the head of its trust department. The offer was not acted upon definitely or decisively until November 10th, but during the interval Mr. Owens conferred with other officials of the bank in regard to the matter, and through appellee endeavored to secure from Haggar a better and more acceptable offer, but, failing in this, Owens testified: "Then I got with Mr. Asbury again and he and I went into the value and the conditions, and I went back to our people and recommended to them to accept this trade." Was then asked: "In other words, you agreed then, on November 10th, to take what he (Haggar) had offered you on August 27th, regardless of what had gone on in the meantime, didn't you?" He answered: "Yes, sir." Mr. Owens gave other answers to the same effect, showing, we think, very satisfactorily that, while Haggar's offer was not at first acceptable to the bank, but failing to secure a better one, the offer was accepted on November 10th, which up to that time had not been withdrawn by Haggar. When this decision was reached, it was discovered that Haggar's offer, to which was attached the $1,000 check, had been misplaced, and, after search, was not at that time to be found; thereupon appellee, using the same printed form as the one used by Haggar in submitting the offer, prepared what was intended to be a duplicate or reproduction of the original Haggar proposition, and on November 10th this was signed on behalf of the bank by Mr. Owens, vice president. While the latter instrument is somewhat variant from the original proposition by Haggar, the variance in our opinion is immaterial, especially in view of the fact that, in signing the latter document, Owens was simply manifesting acceptance by appellant of the original offer. This instru-

ment, on the same day, was taken by appellee to Haggar, who, learning that his check for $1,000 attached to the offer of August 27th was lost and had not been collected, immediately communicated with the bank upon which it was drawn, and stopped payment thereof, and within about two days thereafter notified appellee that the deal was off. Appellee demanded of appellant payment of his commission, based on the contention that, through his efforts a contract for the sale of the real estate had been consummated, with which appellant refused to comply.

In answer to special issues, the jury found that, prior to November 10th, Haggar did not withdraw his written offer of August 27th; that appellant did not reject the Haggar offer, but accepted same on November 10th; that in signing the instrument of November 10th it was the intention of Owens, vice president, to accept the offer of Haggar dated August 27th; and that it was not his intention thereby to submit to Haggar a counter proposition.

■ The findings of the jury, we think, are supported by evidence and are adopted as our conclusions on said issues, from which and other relevant facts we conclude that, due to the services of appellee and his associate, Mr. Cunningham, a binding and enforceable contract was consummated between the bank and Haggar; hence that appellee was entitled to recover the stipulated commission, as held by the court below, unless, as contended by appellant, Owens was neither authorized by virtue of being vice president to enter into a binding contract on behalf of the bank for the sale of the real estate nor by virtue of express authority from its board of directors; in regard to the latter the contention being that the directors were without authority to delegate to a vice president their discretionary power to sell the bank's real estate or authorize its sale except by resolution prescribing the terms, conditions, etc., of sale.

■ We are in accord with the contention of appellant that Owens was not authorized, merely by virtue of his office as vice president, to sell and convey the bank's real estate, or to enter into a binding contract for such purpose. The authorities cited by appellant fully sustain that proposition. See Fletcher, Cyc. of Corps. p. 3223; Fitzhugh v. Franco-Texas Land Co., 81 Tex. 306, 16 S.W. 1078; Mor-

gan v. Washburn Lbr. Co. (Tex.Civ.App.) 180 S.W. 911; Hurlbut v. Gainor, 45 Tex. Civ.App. 588, 103 S.W. 409; Aransas Pass Harbor Co. v. First Nat. Bank, 28 Tex.Civ. App. 372, 67 S.W. 906.

■■ However, we cannot assent to the soundness of appellant's other contention that Owens, as vice president, was without express authority from the board of directors to sell and convey the real estate in question or to consummate on behalf of the bank a binding contract for such purpose. The real estate in question was one of 50 to 75 separate parcels owned by the bank at the time, title to which had been acquired in satisfaction or to secure payment of debts previously contracted, which the bank was forbidden to hold for a longer period than five years. 12 U.S.C.A. § 29. In this situation the board of directors adopted the resolution which we think conferred upon Vice President Owens express authority to bind the bank on the contract in question. The resolution reads: "Be it resolved: That the President, any and all Vice Presidents, Chairman of the Board, Chairman of the Executive Committee, or Cashier of the Republic National Bank and Trust Company of Dallas, Texas, are hereby authorized and empowered to sell any and all real estate or interest therein at any time owned by the said bank; every and all of said officers being hereby authorized to make and execute in the name of this Bank all deeds of conveyance or releases in any manner connected therewith."

Section 24 of chapter 2, title 12 of the U.S.C.A., authorizes a national banking association, "Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places. *. * * Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter."

Thus we see that, as authorized in the fifth subdivision of section 24, the board of directors was authorized to appoint, among others, a vice president and define his duties. In the instant case Mr. Owens was appointed a vice president; among other duties required of him was to sell and convey the bank's real estate, and as a necessary corollary we think he was clothed with authority to contract for and consummate sales. We are here dealing with real estate taken over by the bank in satisfaction of debts previously contracted in the course of its dealings, which it was forbidden by statute to hold for a longer period than five years. The enumeration in the seventh subdivision of section 24, supra, of incidental powers that may be exercised by the board of directors, or under its authority, necessary to carry on the business of banking, is not exclusive of other powers as may be found necessary to carry on said business, but is merely descriptive. See First National Bank of Charlotte v. National Exch. Bank of Baltimore, 92 U.S. 122, 23 L.Ed. 679; Western Nat. Bank v. Armstrong, 152 U.S. 346, 14 S.Ct. 572, 38 L.Ed. 470; Nebraska v. First Nat. Bank of Orleans (C.C.) 88 F. 947.

While the sale of lands thus acquired by national banks is not mentioned in the enumeration of incidental powers, yet it has been held that such a power is included. The Circuit Court of Appeals of the United States for the Eighth Circuit, in Cooper v. Hill, 94 F. 582, 585, used language in point as follows: "When a national bank has lawfully acquired real estate or other property, it may sell that property and convert it into money; and, in order to do so, it may clean it, make reasonable repairs upon it, and put it in presentable condition to attract purchasers, in the same way that an individual of sound judgment and prudence would do if he desired to make a sale of the property. The authority to do these things is one of the incidental powers vested in the corporation under section 5136 of the Revised Statutes, which provides that a national bank shall have authority: 'Seventh,' etc." The court then quoted the "seventh" subdivision of the statute, which is now the "seventh" subdivision of section 24, chapter 2, title 12 of the U.S.C.A., supra.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.