FIRST NATIONAL CITY BANK, Appellant, *v.* THE REGISTRAR OF PROPERTY OF CAGUAS, Respondent.

No. G-63-1.    Decided January 16, 1964.

*McConnell, Valdés & Kelley,* and *Ramón Morán Loubriel* for appellant. The registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The Registrar of Property of Caguas refused to record a deed executed by Webster E. Pullen, in the name and on behalf of the First National City Bank, whereby the bank sells certain real estate to Cosmopolitan Realty Corporation for the sum of $1,205.25, on the ground that the capacity and powers of Pullen to represent the bank were not established, since it does not appear that that agent has *express* powers to enter into a sales contract and to execute the corresponding deed on behalf of that entity. In the recital of the deed it is stated that the bank is represented by Pullen in his capacity as vice-president of the institution, who assures that he has authorization therefor from that banking institution which he will prove whenever it may be necessary.

Together with the deed there was presented a copy, attested before a notary, of § 2 of art. X of the bylaws of the bank entitled "Execution of Instruments," which in brief provides that any agreement, mortgage, deed, conveyance, transfer . . . and other instruments or documents may be signed, executed . . . delivered or accepted in behalf of the bank by any vice-president thereof.[1]

▮ The registrar's contention as well as that of appellant bank turns exclusively on the meaning of the terms "deeds," "conveyances" and "transfers." We agree with appellant that the term "sale" is comprised within the term "conveyance" currently used in the English language to denote the transfer of the title or any interest in real estate. 9A Words and Phrases 223 *et seq.*; Black's Law Dictionary 402 (4th ed.). In the translations of our decisions as well as in the official translation of the General Corporation Act the term "conveyance" has been used to denote the transfer or sale of real estate. See the Spanish and English texts in *Santini Fertilizer Co.* v. *Burgos et al.*, 34 P.R.R. 830

---

[1] The English text of § 2 reads as follows:

"Execution of Instruments. All agreements, indentures, mortgages, deeds, conveyances, transfers, certificates, declarations, receipts, discharges, releases, satisfactions, settlements, petitions, schedules, accounts, affidavits, bonds, undertakings, proxies and other instruments or documents may be signed, executed, acknowledged, verified, delivered or accepted in behalf of the Association by the Chairman, or the Chairman of the Executive Committee, or the President, or any Vice-Chairman, or any Executive Vice-President, or the Chairman Credit Policy Committee, or the Vice-President Operations, or any Senior Vice-President, or the Manager Overseas Division, or the Cashier, or the Comptroller, or the Deputy Manager Overseas Division, or any Vice-President, or any Deputy Comptroller, or, if in connection with the exercise of any of the fiduciary powers of the Association, by any of said officers or by any Trust Officer. Any such instruments may also be executed, acknowledged, verified, delivered or accepted in behalf of the Association in such other manner and by such other officers as the Board of Directors may from time to time direct. The provisions of this Section 2 are supplementary to any other provision of these By-Laws."

(1926); *López et al.* v. *Ortiz et al.*, 33 P.R.R. 3 (1924); and 14 L.P.R.A. § 1202(4).

However, the parties do not raise the question, which in our opinion is fundamental in this case, as to whether the cited section of the bylaws of the bank which expressly and unquestionably empowers its vice-presidents to sign the instruments enumerated also empowers them in law to carry out the sales transaction referred to in the deed the registration of which has been denied.

■ It is a well-settled doctrine in this jurisdiction that *express* commission is required for an agent to perform acts of strict ownership such as the sale of real estate (§§ 1211 and 1604 of the Civil Code, 1930—31 L.P.R.A. §§ 3376 and 4425). *Sucrs. of Andreu & Co., Ltd.* v. *Reg. of Prop.*, 20 P.R.R. 396 (1914).

■ The federal law applicable to national banks such as the First National City Bank does not prevent such banks from possessing and disposing of real estate in the normal course of business, except that the possession of that class of property is limited to a maximum period of five years, 12 U.S.C.A. § 29; 10 Am. Jur.2d § 270 *et seq.* On the other hand, neither the president nor the vice-presidents of a corporation or of a bank are invested with power, by the fact alone of the office which they hold, to sell or otherwise dispose of the tangible assets of the enterprise in the absence of authorization to that effect set forth in the organization certificate, the bylaws or in a resolution or agreement of the board of directors.[2] 12 U.S.C.A. § 24, par. 6; *Republic Nat. Bank & Trust Co.* v. *Asbury*, 91 S.W.2d 824 (Texas 1936); 4 Thompson, Corporations, footnote 16, p. 99, and p. 105 (3d ed.); 2 Fletcher, Corporations, § 605, pp. 720,

---

[2] As to the powers of a managing partner to appear on behalf of a partnership in acts of strict ownership, see *Vélez González* v. *Registrar*, 88 P.R.R. 589 (1963); *Morell* v. *Registrar of Arecibo*, 27 P.R.R. 114 (1919).

724, 725; § 627, pp. 776, 780; § 634, p. 786; 10 Am. Jur.2d § 121, p. 122; § 133, pp. 131, 132.

■■ In the case before us appellant contends that the part of the bylaws of the bank cited above delegates sufficient power to Vice-President Pullen to carry out on behalf of the bank the sales transaction of the real estate of the institution. It is not right. The title of § 2 *supra* sets forth the purpose for which it was drawn up, which is the execution or signing of documents, instruments, etc. The body of the section uses terms which denote authority to execute and sign contracts of the classes therein specified, but there is nothing in its content to express the determination to empower the vice-presidents to execute such contracts in the name and on behalf of the bank. It is to be noted that the delegation in question is to the effect of signing, executing, delivering and accepting the documents or papers of such transactions. The power delegated is limited to appearing on behalf of the banking institution in the act necessary to complete the different transactions recited in the section *supra* which the bank may carry out. No delegation of power by the bank agreeing to sell real estate has been proved to the registrar. (4 Thompson, Corporations, § 2496, footnote 16, p. 99, and pp. 132–34 (3d ed.).)

■ Although the power to sell implies the power to execute the corresponding instrument or deed,[3] this is not so when the situation is the inverse. In *Yabucoa Sugar Co.* v. *Registrar of Humacao*, 30 P.R.R. 533 (1922), we said that "the fact that the *manager* was authorized to sign in the name of the partnership deeds of conveyance made by it does not mean that he was authorized to sell real property of the partnership. Considering the terms of the partnership contract and the law and jurisprudence, for that purpose an express resolution of the partnership was necessary." See,

---

[3] Thompson, *op. cit.*, § 2517, p. 132.

also, the resolution of the General Directorate of the Registries of May 18, 1933 (VII Roca Sastre y Molina, *Jurisprudencia Registral* 386 and 391).

The decision appealed from will be affirmed.

